**ELDER v. BRANNAN, Secretary of Agriculture.**

**FURMAN v. BRANNAN, Secretary of Agriculture.**

**Nos. 10007, 10008.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 7, 1949.

Decided June 15, 1950.

Mr. Robert D. Elder, of the Bar of the Supreme Court of Colorado, *pro hac vice*, by special leave of Court, with whom Mr. Claude L. Dawson, Washington, D. C., was on the brief, for appellants.

Mr. Eugene T. Maher, Attorney, Department of Justice, Washington, D. C., of the Bar of the Court of Appeals of New York, *pro hac vice,* by special leave of Court, with whom Assistant Attorney General H. G. Morison and Messrs. George Morris Fay, United States Attorney, Washington, D. C., and Edward H. Hickey, Special Assistant to the Attorney General, were on the brief, for appellee.

Messrs. Charles Fahy and Philip Levy, Washington, D. C., filed a brief on March 26, 1949, as amicus curiæ for National Association of Federal Career Employees, urging affirmance.

Before WILBUR K. MILLER, PRETTYMAN and BAZELON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The appellant, Robert D. Elder, was honorably discharged from the United States Army after active service in World War I.[1] He passed a competitive civil service legal examination in September, 1942, and

1. There are two appeals here. Elder is the appellant in case No. 10007 and Greene Chandler Furman is the appellant in case No. 10008. These men filed separate independent suits in the District Court but, because they involved substantially identical facts and presented identical questions of law, the cases were consolidated and heard together in the District Court and were briefed and argued as one before us. This opinion applies in its entirety to Furman's case as well as to Elder's.

on August 1, 1943, was employed as an attorney in the Department of Agriculture. Although he had had at all times an efficiency rating of "good" or better, he was notified on May 29, 1947, that, as a part of a reduction in force made necessary by lack of funds, he would be dismissed as of June 30, 1947. He sued on June 5, 1947, to enjoin the Secretary of Agriculture from discharging him, claiming the right to be retained because of the statutory preference given to veterans. After his dismissal he continued his effort, by amended and supplemental complaint, to obtain an adjudication that he had been wrongfully discharged and should be reinstated. The Secretary moved for summary judgment, with respect to which affidavits were filed by both sides. The District Court in granting the motion said:

"It seems clear that plaintiff was a war service appointee and did not have a permanent Civil Service status. His separation was effected in full compliance with the applicable statutes and regulations. Upon consideration of such facts plaintiff may not succeed."

Elder appeals. He claims that by passing a competitive civil service legal examination and by serving a probationary period of one year, he attained a classified civil service status and that under statutory provision[2] he had an absolute right not to be discharged, dropped or reduced in rank or salary in the event of a reduction in force. He further maintains that, even if he had not acquired classified civil service status, he had under these statutes a preference in retention and reinstatement which had been violated.

The Secretary replies that appellant was a war service appointee whose tenure was limited to the duration of World War II and six months thereafter, and that he had not attained the classified civil service status he claims. He asserts that Elder was properly classified in group B-1 under the Civil Service Commission regulations gov-

erning the retention preference of veterans in a reduction in force;[3] that those regulations are valid under § 12 of the Veterans' Preference Act of 1944 and that the appellant's dismissal was in accord with the regulations. The Secretary claims the proviso of § 4 of the Act of 1912 does not apply to war service appointees.

The first question then is whether Elder had reached or become entitled to classified (competitive) civil service status.

Executive Order No. 9063, issued February 16, 1942 (3 Code Fed.Regs., Cum. Supp.1943, 1091), authorized the Civil Service Commission to adopt such special procedures and regulations as it might deem necessary to avoid delay in recruiting employees during the war emergency. The President expressly provided, however, that persons appointed under such special procedures to positions subject to the Civil Service Act and the Commission's rules should not thereby acquire a classified (competitive) civil service status, but, in the Commission's discretion, might be retained for the duration of the war and six months thereafter.

Pursuant to this Executive Order, the Civil Service Commission prepared and adopted the War Service Regulations effective March 16, 1942 (5 Code Fed.Regs. § 18.3, Cum.Supp.1943), setting up special procedures of the sort and for the purpose contemplated by the Order. The subsequent appointment of attorneys was governed by the regulations of the Board of Legal Examiners of the Civil Service Commission, which contained the following (5 Code Fed.Regs. § 17.1, Cum.Supp. 1943):

"(g) All appointments to attorney and law clerk-trainee positions shall be for the duration of the present war and for six months thereafter, unless otherwise specifically limited to a shorter period, and shall be made subject to the satisfactory completion of a trial period of one year. Such appointment shall be effected under

---

2. The proviso of § 4 of the Act of August 23, 1912, 37 Stat. 413, ch. 350, § 4, 5 U.S.C.A. § 648; Veterans' Preference Act of 1944, and especially §§ 2, 12, 14

and 18 thereof, 58 Stat. 387, ch. 287, 5 U. S.C.A. §§ 851, 861, 863 and 867.

3. See footnote 4.

Executive Order No. 9063 of February 16, 1942, (Title 3, *supra*), and persons thus appointed will not thereby acquire a classified Civil Service status. No person shall be appointed unless (1) he has qualified by passing an appropriate examination prescribed by the Board or, (2) in case of special emergency, the Board has authorized his appointment subject to subsequent examination. Such appointments shall in other respects be governed by the requirements and procedures prescribed by these Regulations. This paragraph shall become effective March 16, 1942."

Since the foregoing was the regulation in effect at the time the appellant was appointed, his acceptance of employment necessarily was subject to the terms thereof. Nothing occurred later to change the nature of his status or tenure. It follows that throughout the period of his employment he was a war service appointee with tenure limited to the duration of the war and a period of six months thereafter, entitled to the preference given by law to veterans in that status.

Elder's preference does not arise from the proviso of § 4 of the Act of 1912 because the application of that section is confined by its terms to those having classified civil service status. But he has preference under the Veterans' Preference Act of 1944, and particularly under §§ 2 and 12. The latter provides that

"In any reduction in personnel in any civilian service of any Federal agency, competing employees shall be released in accordance with Civil Service Commission regulations which shall give due effect to tenure of employment, military preference, length of service, and efficiency ratings: * * * *Provided further,* That preference employees whose efficiency ratings are 'good' or better shall be retained in preference to all other competing employees * * *."

We held in Hilton v. Forrestal, 1947, 83 U.S.App.D.C. 44, 165 F.2d 251, that the term "competing employees" used in § 12 of the Act refers to employees competing within the bounds of such classifications as the Commission might establish by regulations. The Civil Service Commission promulgated on May 1, 1947, retention preference regulations for use in reductions in force which set up classifications for the grouping of employees so that those classified in each group would be regarded as "competing" with one another. Those classifications and the subgroups into which they were divided, which are reproduced below,[4] were approved by us in the Hilton

---

4. 5 Code Fed.Regs. § 20.3, Supp.1947.
    "§ 20.3. *Retention preference*—(a) *Classification.* For the purpose of determining relative retention preference in reductions in force, employees shall be classified according to tenure of employment in competitive retention groups and subgroups as follows:
    "*Group A:* All employees who have met all requirements for indefinite retention in their present positions. With respect to positions subject to the Civil Service Act and rules, this includes all employees currently serving under absolute or probational civil service appointments or who were appointed, reappointed, transferred or promoted from absolute or probational civil service appointments to war service indefinite or trial period appointments without a break in service of thirty days or more. With respect to positions excepted from the Civil Service Act and rules, this includes all employees currently serving under appointments without time limitation.
        *        *        *        *        *        *

    "A-1 Plus during one-year period after return to duty, as required by law.
    "A-1 With veteran preference unless efficiency rating is less than 'Good.'
    "A-2 Without veteran preference unless efficiency rating is less than 'Good.'
    "A-3 With veteran preference where efficiency rating is less than 'Good.'
    "A-4 Without veteran preference where efficiency rating is less than 'Good.'
    "*Group B:* All employees serving under appointments limited to the duration of the present war or for the duration of the war and not to exceed six months thereafter, or otherwise limited in time to a period in excess of one year, except those specifically covered in Groups A and C.
        *        *        *        *        *        *
    "B-1 With veteran preference unless efficiency rating is less than 'Good.'
    "B-2 Without veteran preference unless efficiency rating is less than 'Good.'
    "B-3 With veteran preference where efficiency rating is less than 'Good.'

case. We do not read the Supreme Court's opinion in Hilton v. Sullivan, 1948, 334 U. S. 323, 68 S.Ct. 1020, 92 L.Ed. 1416, as holding to the contrary. It results that, since the appellant was a war service appointee with an efficiency rating not less than "good", he was properly classified in group B and subgroup B-1, a status which gave him the highest preference for retention among all war service appointees whenever a reduction in force became necessary.

The record does not clearly show that any war service appointee of Elder's grade or lower, with a classification for retention preference inferior to subgroup B-1, was retained when he was discharged, so it does not appear that his preferential right to be retained was directly violated. We note, however, that appellant's preference as a member of subgroup B-1 is not limited to the right to be *retained* over competing employees in lower subgroups when reductions in force occur; by express congressional enactment his preference extends also to reinstatement and re-employment. For § 2 of the Act of 1944 provides:

"In certification for appointment, in appointment, in reinstatement, in reemployment, and in retention in civilian positions in all establishments, agencies, bureaus, administrations, projects, and departments of the Government, permanent or temporary, and in either (a) the classified civil service; (b) the unclassified civil service; * * * preference shall be given to * * (4) those ex-servicemen and women who have served on active duty in any branch of the armed forces of the United States, during any war, * * * and have been separated therefrom under honorable conditions; * * *."

Elder's rights under this section of the statute were violated if he was denied reinstatement or re-employment when other attorneys, classified in a lower subgroup than B-1, who had been released with him, were re-employed. He alleges that this happened. He pleads that soon after the reduction in force said to have been due to lack of funds, certain attorneys of the same grade as his, but who were in a lower classification under the regulations for retention, were reinstated or re-employed as attorneys in the office of the Solicitor for the Department of Agriculture, but that he was denied re-employment. The complaint gives the names of six attorneys of the lower retention subgroup B-2 so re-employed in preference to the appellant.[5]

"B-4 Without veteran preference where efficiency rating is less than 'Good.'
"*Group C:* All employees serving under appointments specifically limited to one year or less, all non-citizen employees serving within the continental limits of the United States, all employees continued beyond the automatic retirement age, and all annuitants appointed under section 2(b) of the Civil Service Retirement Act, as amended [5 U.S.C.A. § 698 (b)]. .

* * * * * *

"C-1 With veteran preference unless efficiency rating is less than 'Good.'
"C-2 Without veteran preference unless efficiency rating is less than 'Good.'
"C-3 With veteran preference where efficiency rating is less than 'Good.'
"C-4 Without veteran preference where efficiency rating is less than 'Good.'"

5. These paragraphs from appellant's amended and supplemental complaint contain the allegations to which we refer:

"29. During all times since June 6, 1947, the defendant and his agents have wrongfully excluded the plaintiff, Robert D. Elder, from employment and active duty in his position of Attorney, Grade P-3, in the Washington office of the Office of the Solicitor, United States Department of Agriculture; and since June 6, 1947, the defendant has employed and continued in employment, in wrongful preference to plaintiff, other competing employees, the same being non-veterans' preference Attorneys, Grade P-3, who have been and still are performing work, functions, and duties which were formerly performed by plaintiff with an efficiency rating of 'very good', as well as assuming to perform functions and duties which plaintiff was and is capable of performing.

* * * * * *

"31. Soon thereafter the Solicitor put back to work and employment on active duty all the non-veterans' preference Attorneys on the 'retention register' in sub-group A-2, together with a consider-

These allegations, which charge wrongful discrimination against Elder in the reinstatement of non-veterans in October, 1947, were not denied by the Secretary and nothing in the affidavits which he filed tends to contradict them. There was, therefore, no genuine issue concerning the material fact that Elder's right to preference in re-employment had thereby been denied him. So, on the record presented to him, the trial judge erred in granting summary judgment to the Secretary of Agriculture; to the contrary, the appellant was entitled to summary judgment in the state of the pleadings.

We note, however, that appellee's motion for summary judgment apparently

able number of the non-veterans' preference Attorneys in sub-group B-2, who had received such notices of separation. But neither plaintiff nor any other veterans' preference eligible among the Attorneys in the supposedly superior sub-group B-1, regardless of his professional grade or efficiency rating, has ever been put back to work or given any employment since June 6, 1947, in the Office of the Solicitor, United States Department of Agriculture.

"32. Among the Attorneys in the relatively inferior retention sub-group B-2, whom the Solicitor thus put back to work and continued in employment, were the following persons: (1) Virginia Merrill, (2) Lotus Threkelson, (3) Helen Lutzen, (4) Marion Poole, (5) Neil Johnson, and (6) Russell Johnston, each of whom has been steadily employed as an Attorney, Grade P-3, on active duty with pay in said Washington office of the Office of the Solicitor during the several months last past, and each of whom is still steadily employed therein, although plaintiff is informed and believes that Congress has appropriated no additional funds available for such Attorney salaries since May 29, 1947. Prior to June 6, 1947, each of said six Attorneys in such inferior sub-group B-2 was on duty in said Washington office under an appointment subject to the same ostensible time limitation as that of plaintiff, to-wit: 'for the duration of the war and for six months thereafter.' * * * None of said six Attorneys in said inferior sub-group B-2 has ever been accorded a permanent or classified (competitive) civil service status. None of said six Attorneys in sub-group B-2 has ever served 'on active duty in any branch of the armed forces of the United States during any war * * * .' (Veterans' Preference Act of 1944, 58 Stat. 390, 5 U.S.C.A. 851, 861). None of said six Attorneys has ever been an 'honorably discharged soldier or sailor whose record in said department is rated good * * * .' (Act of August 23, 1912, 37 Stat. 413, 5 U.S.

C.A. 648). None of said six Attorneys is now or ever has been a veterans' preference eligible, nor a veterans' preference employee, nor an honorably discharged soldier or sailor, nor entitled to any right, privilege, or preference as such.

\* \* \* \* \* \*

"34. In addition to the above Attorneys, Grade P-3, in sub-group B-2, the defendant has concurrently continued in employment on active duty a considerable number of other Attorneys in Grade P-4 and higher, who are non-veterans in said sub-group B-2 and none of whom has ever been accorded permanent or classified (competitive) civil service status. One such Attorney, who is a non-veteran serving under an indefinite war-service appointment in sub-group B-2, was on May 29, 1947, and thereafter, unlawfully withheld from the prescribed operation of the Civil Service Retention Preference Regulations and has never been the recipient of a separation notice. Each of the aforesaid acts was likewise in violation of plaintiff's statutory rights and the regulations.

"35. The employment and continuation in employment by defendant of the non-veteran Attorneys above-referred to, including the aforesaid six Attorneys, Grade P-3, sub-group B-2, has required and requires a far greater expenditure of funds, many times over, than would result from the employment of plaintiff, one Attorney, Grade P-3, in the superior retention sub-group B-1. The reason, 'lack of funds,' asserted by defendant to necessitate plaintiff's concurrent exclusion from such employment, does not exist and is without justification; and this plaintiff has thereby been deprived of his aforesaid statutory rights to continuing employment without sufficient or legal cause, and without any cause whatsoever, in further violation of the requirements of section 14, Veterans' Preference Act of 1944 (5 U.S.C.A. 864 [863] ), in respect of the notification and establishment of such cause and the reasons therefor."

was based on his mistaken idea that the only question in the case was whether Elder's discharge was lawful. The appellee seems to have overlooked the appellant's charge of discriminatory re-employment, for he did not deny the charge nor treat with it in the affidavits which he filed. The trial judge also failed to consider the undenied allegations concerning discrimination in re-employment, else he would not have awarded summary judgment to the appellee. It is possible that, upon remand, the Secretary may be able to raise an issue of fact concerning the alleged discrimination against Elder in the re-employment of attorneys. Fountain v. Filson, 1949, 336 U.S. 681, 69 S.Ct. 754, seems to indicate that he should be given an opportunity to do so. The judgments are reversed and the cases will be remanded. If the record remains as it is, the District Court should enter summary judgments to the effect that on October 27, 1947, both appellants were wrongfully denied reinstatement. But if the Secretary of Agriculture denies the allegations of discrimination against the appellants in re-employment, the District Court will, of course, proceed to determine the issue of fact thereby created.

Reversed and remanded.