**KETCHIKAN PACKING COMPANY et al., Appellants**

v.

**Fred A. SEATON, Secretary of the Interior, et al., Appellees.**

No. 15075.

United States Court of Appeals District of Columbia Circuit.

Argued May 4, 1959.

Decided May 14, 1959.

Mr. Howard C. Westwood, Washington, D. C., with whom Messrs. Stanley L. Temko, Robert L. Randall, and William H. Allen, Washington, D. C., were on the brief, for appellants.

Mr. Jerome A. Cohen, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellees. Mr. John F. Doyle, Asst. U. S. Atty., also entered an appearance for appellees.

Before PRETTYMAN, Chief Judge, and FAHY and BURGER, Circuit Judges.

## PER CURIAM.

Appellants attack [1] the validity of an order of the Secretary of the Interior dated March 7, 1959, 24 Fed.Reg. 2053–

---

1. This is an appeal from the District Court's denial of declaratory judgment and preliminary injunction. We granted appellants' motion for a stay pending appeal and expedited the case. Appellants adequately represent three different interested classes: (1) salmon canning companies dependent to a substantial degree upon fish caught by traps in Alaskan waters; (2) individuals whose livelihoods have been dependent upon Alaskan trap fishing; and (3) companies and individuals who have ownership interests in Alaskan trap fishing locations.

71, which has the effect of prohibiting the use of fish traps in Alaskan waters effective April 18, 1959.[2] The order recites its authority as being Section 1 of the White Act,[3] and before this court the Secretary argued that the White Act has been so amended by Section 6(e) of the Alaska Statehood Act[4] as to compel him to order the prohibition. In promulgating the order, the Secretary says he merely complied with a statutory duty imposed by Congress.

The so-called Westland proviso contained in Section 6(e) of the Statehood Act reads:

"[T]he administration and management of the fish and wildlife resources of Alaska shall be retained by the Federal Government *under existing laws* until the first day of the first calendar year following the expiration of ninety legislative days after the Secretary of the Interior certifies to the Congress that the Alaska State Legislature has made adequate provision *for the administration,* management, and conservation of said resources *in the broad national interest* * * *."[5] (Emphasis added.)

On January 3, 1959, simultaneously with the effective date of the Statehood Act, the Constitution of the State of Alaska became effective and with it three ordinances adopted by the people of Alaska along with the Constitution. Ordinance No. 3 provides:

"As a matter of immediate public necessity, to relieve economic distress among individual fishermen and those dependent upon them for a livelihood, to conserve the rapidly dwindling supply of salmon in Alaska, to insure fair competition among those engaged in commercial fishing, and to make manifest the will of the people of Alaska, the use of fish traps for the taking of salmon for commercial purposes is hereby prohibited in all the coastal waters of the State." H.R.Rep. No. 624, 85th Cong., 2d Sess., app. A, 83 (1957).

The Secretary read the words "under existing laws" in the Westland proviso as including Ordinance No. 3 of Alaska, and concluded that the Statehood Act which "accepted, ratified and confirmed" the Alaska Constitution, amended the White Act by prohibiting the use of such traps in Alaskan waters as set forth in the ordinance. In other words, the Secretary argues that the Congress did not intend that he should suspend the Alaskan ordinance, adopted by popular vote along with the Constitution, in the interim period while he administered the state's wildlife resources.

■■ One key consideration in the problem is that we are dealing with a transition measure—a temporary, not a permanent, provision. What was the intention of Congress concerning the in-

2. Except for certain fish traps enumerated in the order which are operated by Indian tribes or villages.

3. 43 Stat. 464 (1924), as amended by 44 Stat. 752 (1926), 48 U.S.C.A. § 221: "For the purpose of protecting and conserving the fisheries of the United States in all waters of Alaska the Secretary of the Interior from time to time may set apart and reserve fishing areas in any of the waters of Alaska over which the United States has jurisdiction, and within such areas may establish closed seasons during which fishing may be limited or prohibited as he may prescribe. Under this authority to limit fishing in any areas so set apart and reserved the Sec-

retary may (a) fix the size and character of nets, boats, traps, or other gear and appliances to be used therein; (b) limit the catch of fish to be taken from any area; (c) make such regulations as to time, means, method, and extent of fishing as he may deem advisable." The White Act provides criminal sanctions for any violation of a regulation of the Secretary made pursuant to its authority. 43 Stat. 466 (1924), 48 U.S.C.A. § 226.

4. 72 Stat. 339 (1958), 48 U.S.C.A. preceding section 23.

5. On April 27, 1959, the Secretary made the certification contemplated by the Westland proviso.

terim transition period between federal territorial control and full statehood? In effect the Westland proviso makes the Secretary a "trustee" for both the federal government and the new state "in the broad national interest" during the transition of administration from the federal to the state authorities. The Secretary, in that unique capacity, could not reasonably disregard a valid law of Alaska which was "existing" [6] on January 3, 1959, the effective date of the Alaska Statehood Act which defined his powers over wildlife resources for the interim period commencing on that date.

We would ignore the obvious were we to fail to state that the question posed to us is close; no reading of the words of the statute, no part of the legislative history, no contemplation of a possible objective leads with absolute certainty to a clear answer. In such a situation, while the Secretary's interpretation of the powers conferred upon him by Congress is not binding on the courts [7] nevertheless it is entitled to considerable weight. In this instance his interpretation is reasonable, and it is consistent with the congressional plan for interim administration of natural resources described in the Westland proviso.[8] We think his view should be sustained.

Of necessity, in this unique interim situation, the Secretary must apply a federal sanction to effect the enforcement of a state law. See footnote 3 supra. This apparent anomaly can be explained only by reference to the fact that in this transition of authority the Secretary is operating in a dual capacity.

We have considered appellants' other contentions, including the argument that procedural errors occurred in the notice and hearings on the Secretary's action prohibiting fish traps, and we find no error which affects the validity of the Secretary's action.

The stay granted by this Court April 14, 1959, is therefore dissolved and the judgment of the District Court is

Affirmed.

---

6. See Jonesboro City v. Cairo & St. Louis R. R. Co., 110 U.S. 192, 198, 4 S.Ct. 67, 70, 28 L.Ed. 116 (1883): "The phrase 'under existing laws,' in the section of the Constitution referred to, relates, we think, to the time of the adoption of the Constitution rather than to the time when the vote of the people was in fact taken."

7. Cf. Brannan v. Stark, 87 U.S.App.D.C.

388, 185 F.2d 871 (1950), affirmed 342 U.S. 451, 72 S.Ct. 433, 96 L.Ed. 497 (1952); Social Security Bd. v. Nierotko, 327 U.S. 358, 368–369, 66 S.Ct. 637, 90 L.Ed. 718 (1946).

8. Cf. 104 Cong.Rec. 8738–39 (daily ed., May 28, 1958); id. at 8272–73 (daily ed., May 21, 1958); id. at 8490–91 (daily ed., May 26, 1958); id. at 10869–70 (daily ed., June 24, 1958).