**Lester K. BORN, Appellant,**

v.

**George V. ALLEN, Director, United States Information Agency, Appellee.**

**No. 15450.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 11, 1960.

Decided Nov. 28, 1960.

As Amended Dec. 22, 1960.

Mr. Samuel C. Borzilleri, with whom Mr. Joseph G. Weeda, Washington, D. C., was on the brief, for appellant.

Mr. Frank Q. Nebeker, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before PRETTYMAN, BAZELON and FAHY, Circuit Judges.

BAZELON, Circuit Judge.

The narrow question in this appeal is whether the Civil Service Commission has authority to order the Director of the United States Information Agency (U.S. I.A.) to re-employ a veteran whose discharge the Commission finds to have been accomplished in violation of the Veterans' Preference Act.

Appellant Born, an honorably discharged ex-serviceman, was continuously employed as a Foreign Service Staff Officer[1] in the U.S.I.A. from February 27, 1956 to September 5, 1957, a period of almost eighteen months. His appointment was "limited to four years or need of employee's services, whichever is less" and was subject to a two-year probationary period. After serving some eleven months as a cultural affairs officer in Manila, Philippines, he was re-assigned, without change in grade or salary, to Washington as an instructor in the French language. Thereafter, on August 5, 1957, he received a letter from the U.S.I.A. Director of Personnel notifying him that it would be necessary "to terminate [his] probationary appointment" within thirty days because of "the severe cut in the Agency's appropriation for fiscal year 1958" and the Agency's inability to relocate him. Dr. Born's employment was terminated on September 5, 1957. The reasons recorded on his personnel record were variously stated as "Services no longer required" and "Expiration of Appointment."

By letter dated September 3, 1957, Dr. Born appealed to the Civil Service Commission claiming that his removal was accomplished in violation of the Veterans' Preference Act of 1944. 58 Stat. 387, 5 U.S.C.A. §§ 851–869 (1958). He prevailed at both the initial and appellate levels, and the Commission recommended his reinstatement. Although compliance with such Commission determinations is "mandatory,"[2] U.S.I.A. refused to reinstate appellant on the ground that Foreign Service Staff Officers in the U.S.I.A. are not covered by the Veterans' Preference Act and hence Dr. Born's employment was not within the regulatory jurisdiction of the Civil Service Commission. Cf. Casman v. Dulles, D.C.D.C.1955, 129 F.Supp. 428.

Appellant thereupon instituted this suit for declaratory judgment and mandamus. From an order granting summary judgment to the U.S.I.A., Dr. Born brings this appeal.

The Veterans' Preference Act of 1944, which codifies, strengthens and broadens the various strands of pro-veteran legislation that have been woven into the fabric of our civil service system since the early days of the Republic,[3] declares in the most sweeping terms that "preference shall be given" to veterans, "in all establishments, agencies, bureaus, administrations, projects, and departments of the Government." 58 Stat. 387 (1944), as amended, 5 U.S.C.A. § 851.[4] The only exclusions from the Act's coverage are that it shall not apply to the legislative

---

1. His employment was designated "F[oreign] S[ervice] S[taff]—Limited—Indefinite." This position is to be distinguished from that of a Foreign Service Officer. *Compare* 22 U.S.C.A. § 870 with 22 U.S.C.A. § 867.

2. 5 U.S.C.A. § 863 ("[I]t shall be mandatory for such administrative officer [who illegally discharges a veteran] to take such corrective action as the Commission finally recommends"). See also 5 U.S. C.A. § 868 ("*Provided,* That any recommendation by the Civil Service Commission, submitted to any Federal agency, on the basis of the appeal of any preference eligible, employee or former

employee, shall be complied with by such agency").

3. See Flanagan v. Young, 1955, 97 U.S. App.D.C. 119, 228 F.2d 466.

4. That section provides:
"In certification for appointment, in appointment, in reinstatement, in reemployment, and in retention in civilian positions in all establishments, agencies, bureaus, administrations, projects, and departments of the Government, permanent or temporary, and in either (a) the classified civil service; (b) the unclassified civil service; (c) any temporary or emergency establishment, agency,

or judicial branches or to persons appointed to the executive branch by the President with the advice and consent of the Senate. 5 U.S.C.A. § 869.

Appellee concedes, as he must, that the U.S.I.A., an "agency" in the executive branch, is within the scope of the Veterans' Preference Act.[5] But he contends that the Foreign Service Act of 1946, under which appellant was hired, is so inconsistent with the Veterans' Preference Act that Congress could not have intended that an employee be subject to both. In short, appellee argues that the Foreign Service Act implicitly repeals the Veterans' Preference Act pro tanto.

To support this position, appellee makes this three-fold argument: (1) If the Veterans' Preference Act applied to persons hired under the Foreign Service Act, the conduct of our foreign relations would be severely hampered. (2) The Foreign Service Act established personnel procedures which are wholly independent of Civil Service Commission control. (3) Procedures authorized by the Foreign Service Act are inconsistent with the application of the Veterans' Preference Act.

■■ While these contentions are not implausible, we think that, individually and collectively, they are insufficient to conclude that Congress implicitly repealed the Veterans' Preference Act. Repeals by implication are not favored. See Casman v. United States, 1958, 143 Ct.Cl. 16, 181 F.Supp. 404; Casman v. Dulles, D.C.D.C.1955, 129 F.Supp. 428

(both holding that the Veterans' Preference Act requires the Department of State to hire veterans whose positions have been transferred from other agencies to the Foreign Service). Cf. Casman v. Herter, D.C.D.C.1959, 177 F.Supp. 285; Feldman v. Herter, 1960, 107 U.S. App.D.C. 239, 276 F.2d 485. This is especially true where the allegedly repealed statute is not an obscure bit of antiquated legislation, but a sweeping declaration of congressional policy concerning the employment of returning veterans. We cannot lightly assume that Congress, when completely revising the personnel procedures in the State Department only two years later, overlooked this most conspicuous statute.

Appellee's principal argument is that "[t]he Foreign Service performs unique and vital functions within the Executive Branch of our Government. So unique and important are these functions that our Government can ill afford to have the Service hampered by interference from other independent agencies within the Government, particularly where such agencies are not charged with the responsibility of conducting foreign affairs." From this it is concluded that "It is * * * inconceivable that Congress should have attempted such a restriction upon the authority of those charged with the conduct of our Foreign Affairs * * *."

But this argument confuses the Foreign Service, the diplomatic arm of the State Department, with the U.S.I.A. It

---

bureau, administration, project, and department created by Acts of Congress or Presidential Executive order * * *, preference shall be given to * * * those ex-service men and women who have served on active duty in any branch of the armed forces of the United States and have been separated therefrom under honorable conditions * * *."

5. Appellee contends in his brief that clauses (a) and (b) of § 851 (quoted at note 4, supra) limit the scope of that section to persons in either the classified or unclassified civil service. Armed with various Civil Service Commission regulations, he goes on to argue that appel-

lant was not in the civil service, either classified or unclassified. We find no merit in this argument. Assuming that his reading of the Act is correct and that there are some jobs in the executive branch which are in neither the classified nor unclassified civil service, appellant's position is in the excepted or unclassified civil service. The excepted service includes "all civilian positions in the executive branch of the Government which are specifically excepted from the requirements of the Civil Service Act * * *." 5 C.F.R. § 1.102(k). Appellant's position is so excepted. 63 Stat. 954, as amended, 5 U.S.C.A. § 1082(2).

also tends to confuse Foreign Service Officers—the career diplomats in the Foreign Service who are appointed by the President with the advice and consent of the Senate and thus exempt from the Veterans' Preference Act (5 U.S.C.A. § 869)—with Foreign Service Staff Officers, the cadre of experts and specialists who assist in the conduct of foreign affairs. See H.R.Rep. No. 2508, 79th Cong., 2d Sess. 6 (1946). Although appellant was hired under the same Act that governs the Foreign Service, his functions and responsibilities are different. The U.S.I.A. is not responsible for formulating foreign policy, for negotiating with foreign governments, or for reporting events abroad to the State Department. Rather its purpose is to arrange cultural and educational exchanges of United States and foreign citizens, 22 U.S.C.A. § 1446; to assist libraries and demonstration centers abroad, 22 U.S.C.A. § 1448; and to disseminate "information about the United States, its people, and its policies, through press, publications, radio, motion pictures, and other information media, and through information centers and instructors abroad," 22 U.S.C.A. § 1461.[6] This is not to say that the functions of U.S.I.A. are not important to the successful conduct of United States foreign policy. But there is nothing in the record before us to show that its functions require the degree of discipline and control over personnel which is said to be essential to the Foreign Service.

Indeed, Congress saw no inconsistency between the functions now performed by the U.S.I.A. and requirements of the application of the Veterans' Preference Act. The Act originally establishing the information and exchange program authorized the Secretary of State to hire persons on a temporary basis "without regard to the civil-service and classification laws * * *." 22 U.S.C.A. § 1471(5). But it explicitly stated that "No provision of this chapter shall be construed to modify or to repeal the provisions of the Veterans' Preference Act of 1944." 22 U.S.C.A. § 1438. In 1953 the U.S.I.A. was created and the authority of the Secretary of State with respect to the exchange and information program—including the authority to hire temporary personnel—was transferred to the Director of the newly established agency. Reorganization Plan No. 8 of 1953, 67 Stat. 642, as amended, 22 U.S.C.A. § 1461 note (Supp.1960). But the Director also obtained concurrent authority to hire persons under the Foreign Service Act of 1946. Executive Order No. 10477, Aug. 3, 1953, 18 F.R. 4540, 22 U.S.C.A. § 811a note.

The appellee concedes that persons hired under the original Information Act are, by explicit direction of 22 U.S.C.A. § 1438, subject to the Veterans' Preference Act. But he contends that persons hired under the Foreign Service Act are immune from the Veterans' Preference Act. Yet appellee does not explain whether functions performed by one group of employees differ from those performed by the other, and does not tell us the basis upon which the Agency determines to employ under one authority or the other.[7] There is therefore no basis for finding that Congress meant to bifurcate the Agency, and make some employees subject to the Veterans' Preference Act and not others.

The appellee alleges certain inconsistencies between the Foreign Service Act and the Veterans' Preference Act as evidence of such congressional intent. The Foreign Service Act, he points out, establishes personnel procedures inde-

---

6. See also 22 U.S.C.A. § 1431, stating the objectives of the Act.

7. We note that in an amicus memorandum to the District Court, the Civil Service Commission contended that the authority of the Director of U.S.I.A. to employ persons under the Foreign Service Act was, as originally contemplated by Congress and the President, limited to personnel stationed abroad, while personnel in this country were to be hired under the Information and Exchange Act and thus subject to the Veterans' Preference Act.

pendent of the Civil Service classification laws. Appointments (5 U.S.C.A. § 1082); performance ratings (22 U.S.C.A. § 986); promotions (22 U.S.C.A. § 1016); sick and annual leave computations (22 U.S.C.A. § 1148 et seq.); salary scales (22 U.S.C.A. § 870); classifications (22 U.S.C.A. § 886); and discharges of Foreign Service staff personnel (22 U.S.C.A. §§ 1021, 1022) are all conducted "under such regulations as * * * [the Secretary] may prescribe" and, from all that appears, free from the control or supervision of the Civil Service Commission. Appellee also makes much of the fact that prior to the creation, in 1946, of the class known as Foreign Service Staff Officers, analogous positions in the State Department were in large part subject to the Civil Service Commission. But we think the absence of *independent* authority in the Commission to supervise or control hiring, promotions and firing within the Foreign Service does not compel the conclusion that the Veterans' Preference Act does not apply to these employees as it does to other civil servants appointed to the unclassified service.

Finally, the appellee relies upon a provision of the Foreign Service Act making the personnel records of officers and employees of the Foreign Service confidential and subject to inspection only by the President, congressional committees, the Secretary and various functionaries in the Department of State. 22 U.S.C.A. § 987.[8] Appellee argues that the Veterans' Preference system, which is administered by the Civil Service Commission, could not apply to the Foreign Service Staff Officers without breach of this confidentiality. This case demonstrates, however, that under prevailing administrative interpretation and practice, the confidentiality provision is not deemed applicable to Foreign Service Staff Officers in the U.S.I.A. In the instant case the Commission had access to the records of appellant in reaching its determination. Moreover, Dr. Born's employment records, prepared by the appellee, state that he is entitled to a five-point veterans' preference, that his retirement coverage is under the Civil Service Commission (and not the Foreign Service) and that the action taken (both hiring and discharge) "may be subject to investigation and approval by the United States Civil Service Commission or the Agency."

■ One other point requires discussion. The Civil Service Commission found Dr. Born's dismissal to be in violation of § 14 of the Veterans' Preference Act. That section establishes various procedural safeguards to discharges for "cause" of any "permanent or indefinite preference eligible, who has completed a probationary or trial period."[9] Appellee did not apply this section to the present case. He viewed appellant's appointment for "four years or as need-

---

8. That section provides in pertinent part:
   "The correspondence and records of the Department relating to the officers and employees of the Service, including efficiency records as defined in section 981(1) of this title but not including records pertaining to the receipt, disbursement, and accounting for public funds, shall be confidential and subject to inspection only by the President, the Secretary, the Under Secretary, the Counselor of the Department, the legislative and appropriations committees of the Congress charged with considering legislation and appropriations for the Service or representatives duly authorized by such committees, the members of the Board of the Foreign Service, the Director General, and such officers and employees of the Government as may be assigned by

the Secretary to work on such records.
   * * * "

9. The section provides in pertinent part:
   "No *permanent or indefinite preference eligible, who has completed a probationary or trial period* employed in the civil service, or in any * * * agency, * * * hereinbefore referred to shall be discharged, * * * except for such cause as will promote the efficiency of the service and * * * the person whose discharge * * * is sought shall have at least thirty days' advance written notice * * * stating any and all reasons, specifically and in detail, * * * shall be allowed a reasonable time for answering the same personally and in writing, and for furnishing affidavits in support of such answer,

ed whichever is less," as not "permanent or indefinite" within the meaning of § 14. The District Court followed this view and awarded summary judgment on the ground that "the Veterans' Preference Act * * * obviously does not apply to a person who received an appointment limited to a specific term." We do not agree.

The terms "permanent" and "indefinite" are not defined by the Act and the parties have not cited, nor has our search revealed, any helpful judicial interpretation. In the context of this statute, we are willing to assume that "permanent" refers only to an appointment with no limit fixed by specific date or contingency. Dr. Born's appointment is clearly not that.

But we think the term "indefinite," in the present context, is subject to at least two reasonable constructions: One, that it refers to an appointment of no fixed maximum duration; in which event it would be synonymous with "permanent" and therefore superfluous. And the other, that it refers to an appointment of uncertain duration, even though a maximum be fixed, in which event it would apply to appellant's case where termination may occur any time within a four-year period when his services are no longer needed.

We think that, since the latter construction is also a reasonable one, it should govern for two reasons: First, because it avoids a result which makes

the term "indefinite" surplusage.[10] And second, because it is consistent with the view of the Civil Service Commission, the agency charged with the administration of the statute.[11] This view is reflected in the Regulations which the Commission promulgated under the Act.[12] Part 21 of 5 C.F.R. concerns the application of the Veterans' Preference Act to "all positions * * * in the * * * Federal Government excepted from the competitive service." 5 C.F.R. § 21.1 (Supp.1960). Subsection 21.10 which defines the right of such employees with respect to removals, suspensions, and demotions, is, by its own terms, applicable only to "permanent or indefinite employees." But this subsection goes on to say that it "shall not apply to (a) employees during their first year of current continuous Federal or District of Columbia service, [or] (b) employees appointed for periods specifically limited to one year or less * * *." 5 C.F.R. § 21.10 (Supp.1960). This express exclusion suggests that persons appointed for more than one year have "indefinite" appointments. Otherwise there would have been no need to exclude such employees from the class of "permanent or indefinite employees." This implication is reinforced by regulations in Part 22, dealing with the appeals of preference eligibles under the Veterans' Preference Act, which provide that Part 22 "shall apply to * * * any employee who has completed one year of current continuous employment * * * outside the com-

and shall have the right to appeal to the Civil Service Commission from an adverse decision of the administrative officer so acting * * *." 58 Stat. 390, as amended, 5 U.S.C.A. § 863 (emphasis supplied).

10. See Platt v. Union Pacific R. Co., 1878, 99 U.S. 48, 58, 25 L.Ed. 424 ("a legislature is presumed to have used no superfluous words"); Consolidated Flowers Shipments Inc., Bay Area v. Civil Aeronautics Board, 9 Cir., 1953, 205 F.2d 449.

11. Administrative interpretation of a statute, if reasonable, is "entitled to considerable weight." Ketchikan Packing

Co. v. Seaton, 1959, 105 U.S.App.D.C. 383, 267 F.2d 660, 663.

12. The Commission's authority "to promulgate appropriate rules and regulations for the administration and enforcement" of the Veterans' Preference Act is expressly granted by 5 U.S.C.A. § 860. Other cases upholding the Commission's authority to promulgate rules defining terms used in the Act include: Elder v. Brannan, 1951, 341 U.S. 277, 282–285, 71 S.Ct. 685, 95 L.Ed. 939; Kirkpatrick v. Gray, 1952, 91 U.S.App.D.C. 138, 198 F.2d 533; Fass v. Gray, 91 U.S.App. D.C. 28, 197 F.2d 587, certiorari denied 1952, 344 U.S. 839, 73 S.Ct. 39, 97 L.Ed. 653.

petitive service." 5 C.F.R. § 22.102(a) (Supp.1960).

■ We do not decide, as the Civil Service Commission has contended in an amicus memorandum, that *all* appointments for more than one year are "permanent or indefinite." The possibility of an appointment for a long but fixed term, such as five or ten years, may present difficulties which we need not reach here. We say only (1) that the term "indefinite" can reasonably be read, as the Commission has, to include appointments actually held in excess of one year whose terminal date is uncertain; and (2) that appellant has such an appointment.

■ Another question which lurks in the application of the Veterans' Preference Act to the instant case relates to § 14's requirement that permanent or indefinite preference eligibles complete "a probationary or trial period * * *." Appellant served approximately 18 months of an appointment that was probationary for two years. The Commission ruled [13] that under its regulations, made pursuant to § 11 of the Act, § 14 applies to "any employee who has completed

one year of current continuous employment * * * outside the competitive service." See 5 C.F.R. § 22.102(a), quoted supra. We think the Commission had authority to promulgate regulations which, in effect, refuse to honor probationary periods of over one year for the purposes of § 14.[14]

Accordingly we hold that the Commission did not exceed its powers in holding appellant's position subject to § 14 of the Veterans' Preference Act.

■ Appellee finally contends that, even if the Veterans' Preference Act as a whole applies to appellant, his rights were determined by § 12, dealing with reductions in force,[15] and not § 14 which applies only to dismissals for cause. Whatever the force of this contention, we do not reach it. The sole ground upon which the appellee refused to comply with the Commission's recommendation was its contention that the Veterans' Preference Act does not apply to it. All we hold is that it cannot refuse on that ground. Cf. Perkins v. Elg, 1939, 307 U.S. 325, 349–350, 59 S.Ct. 884, 83 L.Ed. 1320.

13. Although the appellee made this argument before the Commission, he did not renew it in this court, nor, so far as we can tell from the record before us, in the District Court.

14. "If there were no limit upon the length of a probationary appointment in positions in the non-competitive service, an agency could frustrate the application of the Veterans' Preference Act by making appointments probationary for two, five or ten years. Significantly, in the hearings upon the Veterans' Preference Act a representative of a major veterans organization raised this possibility and suggested that § 14 be amended to limit probationary periods to ninety days. The Senate Committee on Civil Service declined to accept this suggestion upon representation of the Chairman of the Civil Service Commission that "the practice of the Commission over a period of years has been never to extend the trial period beyond one year." Hearings on Preference in Employment of Veterans Before the Senate Committee on Civil Service, 78th Cong., 2d Sess. 48 (1944). Moreover, by refusing to honor probationary periods of more than one year

for positions in the unclassified service, the Commission is able to extend equal treatment under § 14 to veterans in the classified and unclassified services.

15. That section provides:
"In any reduction in personnel in any civilian service of any Federal agency, competing employees shall be released in accordance with Civil Service Commission regulations which shall give due effect to tenure of employment, military preference, length of service, and efficiency ratings * * *." 5 U.S.C.A. § 861.
⌐he Commission's regulations define a "reduction in force" as:
"* * * the release of an employee from a competitive level by means of separation from the rolls * * * when such actions are caused by lack of work, *shortage of funds* * * * [etc.]. Reduction in force does not apply to * * adverse action based upon deficiency in conduct or performance or upon other reasons which will promote the efficiency of the service." 5 C.F.R. § 20.1(a) (Supp.1960), emphasis supplied.

Reversed and remanded for further proceedings not inconsistent with this opinion.

PRETTYMAN, Circuit Judge (dissenting).

Regardless of the scope of the Veterans' Preference Act as a whole, Section 14 of that Act is specifically limited to "permanent or indefinite preference eligible[s]". The limiting adjectives are notable when other sections of the Act are read. Section 5 treats "preference eligibles"; Section 6 does the same, as does Section 7. Section 8 says "a veteran eligible". Section 12 says "preference employees"; Sections 13, 15, 16, 18 and 19 say "any preference eligible". In sum, every section of the Act which mentions the subject uses an unqualified general expression, save only Section 14. That section by its explicit terms applies only to "permanent or indefinite" eligibles.

Born's appointment [1] for "four years or the need for employee's services whichever is less" was neither permanent nor indefinite. It was certainly not permanent; and it was indefinite only in the sense that it was uncertain within a matter of months. "Indefinite" in the nomenclature of civil service laws and rules does not mean briefly uncertain; it means a prolonged tenure without specified termination, akin to a permanent appointment.[2]

My brethren rely upon Section 22.102 (a) of the Civil Service Regulations. But this section deals with procedure for appeals. It is a procedural regulation. It does not, and could not, expand the substantive rights conferred by the Act itself, which are the subject matter of the prescribed appellate procedure. A preceding section of the Regulations (Section 21.10) deals with the substantive rights of non-competitive preference employees in respect to removals, and it is phrased in language almost identical to Section 14, repeating *in haec verba* the "permanent or indefinite" qualification.

My brethren also rely upon Congressional intention and legislative history. These are indeed useful considerations when statutory language is ambiguous. But I find no ambiguity in the phrase "permanent or indefinite preference eligible".

So I conclude that Born was not within Section 14 of the Act. In this view I agree with the District Court and would affirm.

---

1. Born was a veteran. Whether he was a "preference eligible" depends upon whether a Foreign Service Staff appointment to the U. S. Information Agency is within the scope of Section 1 of the Veterans' Preference Act. I do not reach that question, assuming for the sake of the argument that he is a "preference eligible".

2. Although the Civil Service Rules and Regulations do not explicitly define the terms "permanent", "indefinite" and "temporary", as applied to the non-competitive or unclassified service, the three terms are used throughout as referring to different modes of tenure.