**Louis HADIGIAN, Plaintiff,**

v.

**BOARD OF GOVERNORS, FEDERAL RESERVE SYSTEM, Defendant.**

Civ. A. No. 76–1694.

United States District Court, District of Columbia.

Dec. 6, 1978.

---

Joel D. Joseph, Washington, D. C., for plaintiff.

Earl J. Silbert, U. S. Atty., Robert N. Ford, and Joseph Guerrieri, Jr., Asst. U. S. Attys., Washington, D. C., for defendant.

## MEMORANDUM

SIRICA, District Judge.

In this action plaintiff challenges the decision of the Board of Governors of the Federal Reserve System (Board) to dismiss him from his position as an applications analyst with the Board. The case is before the Court on the parties' cross-motions for summary judgment. There are no issues of disputed fact.

Plaintiff's complaint raises numerous issues, but focuses its challenge on the validity of the statutory framework within which the Board worked in reaching its decision to dismiss him, and on the Board's adherence to its own internal procedures in implementing that decision. Before embarking on a discussion of the issues, however, a review of the procedural history and present posture of this case is necessary.

*Background*

Plaintiff was hired by the Board on March 30, 1970, as a senior computer programmer. He received a raise in pay in April 1971 and an increase in grade in June 1972. Although there were some questions about his performance after his increase in grade, plaintiff continued to receive periodic pay increases through June 1974, but subsequent to that time he received generally unsatisfactory performance ratings.

In March 1976 the Board stripped plaintiff of many of his responsibilities, denying him further access to its computer, and on April 2, 1976, he was notified that the Board proposed to dismiss him. The notice advised him that he would be suspended with pay from his duties as of April 5, 1976, and that a final decision in his case would be made by May 6, 1976. The notice also specified the reasons for the proposed action,[1] plaintiff's right to reply orally or in writing to the director of personnel, his right to have counsel represent him, and procedures for gaining access to the Board to obtain information to prepare his reply.

Plaintiff met with the director of personnel on April 13 and 14, 1976, and the director agreed to extend the date for a final decision from May 6 to July 15, 1976, while retaining plaintiff on leave with pay status. The Board provided plaintiff with office space from that point on so that he could pursue his job search outside the agency and prepare his case, but restricted his movements in and out of, and within, its offices.

On July 8, 1976, plaintiff again requested a postponement of the final decision and an extension was granted to July 30, 1976. On July 30 plaintiff submitted his written response to the charges against him, but to no avail. He was notified of the final decision to dismiss him by telephone on August 2. The Board informed him that a copy of the final determination was available to him at its offices, but he did not receive a copy in the mail until August 3, 1976.

Shortly after receiving notification of his dismissal, plaintiff requested a de novo agency hearing, a right accorded him by Board procedures. But before the date of the requested hearing plaintiff filed this action. The Board opposed district court review at that stage, moving for dismissal for failure to exhaust administrative remedies. After considering the question, on March 28, 1977, this Court ordered plaintiff to exhaust his administrative remedies, but retained jurisdiction over the action.

In the meantime, the Board's hearing officer had issued a recommended decision which sustained the dismissal, and this decision in turn was sustained by the Board's staff director for management on March 18. Plaintiff made a final appeal to the vice-chairman for internal Board administration, and on April 28 the vice-chairman affirmed the dismissal. The matter is now before this Court for a review of the administrative action.

*Scope of Review*

█ Judicial review of adverse personnel actions in the federal courts is narrowly constrained. There is no provision for de novo review; rather, the district courts are limited to assuring that the agency action was not arbitrary or capricious, was reached in accordance with relevant statutory and procedural requirements, and was not unconstitutional. 5 U.S.C. § 706(2)(A)–(D) (1976); *Doe v. Hampton,* 184 U.S.App.D.C.

---

1. The notice specified the following reasons for the proposed action:

   In particular, you have not prepared written plans, written schedules or schedule revisions as called for, your results continually demonstrate a lack of adequate analysis and design, you have consistently delivered programs late and, on several occasions, the programs delivered were incomplete, incorrect or were insufficiently documented. Your working relationships with users have also become unsatisfactory. In two major project areas to which you were assigned you produced substantially less output per manday expended than others previously assigned to those projects. You have also demonstrated a lack of responsiveness and repeatedly failed to follow up as you were expected to do. Greater detail supporting these conclusions is documented by material in the attachment and other evidence in Board authorized files available to you for review.

373, 378–79, 566 F.2d 265, 271–72 (1977). The review is not a substantial evidence review. The Administrative Procedure Act (APA) requires a substantial evidence review only when a statute specifically provides for an agency hearing. 5 U.S.C. § 706(2)(E) (1976); *see Doe v. Hampton, supra,* 184 U.S.App.D.C. at 378, 566 F.2d at 271; *Wood v. U. S. Post Office Dept.,* 472 F.2d 96, 99 (7th Cir. 1973), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2775, 37 L.Ed.2d 399 (1973), *on remand,* 381 F.Supp. 1371 (N.D. Ill.1973), *aff'd,* 511 F.2d 1405 (7th Cir. 1975). In this case, the applicable statutes and regulations make it clear that a hearing is not required. 5 U.S.C. §§ 554(a)(2), 7501, 7512 (1976); 5 C.F.R. § 752.202(b) (1978).

*Discussion*

Plaintiff served in the armed forces from 1952 to 1954, when he received an honorable discharge, and is thus "preference eligible" under 5 U.S.C. § 2108 (1976). As a consequence, he claims entitlement to the expanded procedural rights accorded preference eligible employees in adverse actions under 5 U.S.C. §§ 7512 & 7501 (1976).[2] He argues here that the Board did not afford him these rights, charging specifically that: (1) the notice of proposed adverse action did not adequately apprise him of the charges against him as required by section 7501 and 5 C.F.R. § 752.202(a) (1978); (2) the Board did not afford him an opportunity to answer charges against him in person, as is required by Board procedures and Civil Service Commission regulations, 5 C.F.R. § 752.202(b) (1978); (3) the Board provided him with written notice of his dismissal one day after the effective date of the dismissal rather than on or before the effective date as required by Board procedures and 5 C.F.R. § 752.202(f) (1978); (4) the Board did not notify him of his right to appeal its decision to the Civil Service Commission as is required by 5 C.F.R. § 752.202(f) (1978); and (5) the Board's denial to him of access to its computer in March 1976 constituted a separate adverse action for which the proper procedures were not followed.

The Board responds to plaintiff's allegations with two arguments: first, that the Veterans Preference and Lloyd-La Follette Acts, and regulations promulgated thereunder, do not apply to the Board; and second, that even if they did, the Board provided plaintiff with substantially the same procedural rights as those statutes and regulations require.

Although this Court acknowledges that Board employees are in the excepted service by virtue of 12 U.S.C. § 248(*l*) (1976)[3] and 5 C.F.R. § 213.3124(a) (1978),

---

**2.** The first of these sections, 5 U.S.C. § 7512 (1976), is a codification of section 14 of the Veterans Preference Act of 1944, ch. 287, 58 Stat. 387. The procedural rights guaranteed by the Act apply to all preference eligible employees in the U.S. Civil Service, whether in the competitive or excepted service, 5 U.S.C. § 1302(b)–(c) (1976), and the U.S. Civil Service Commission is granted authority to promulgate appropriate regulations to implement the policy of the Act. *Id.* Plaintiff is a preference eligible employee as that term is defined by 5 U.S.C. § 7511 (1976).

The other section, 5 U.S.C. § 7501 (1976), is a codification of the Lloyd-La Follette Act of August 24, 1912, ch. 389, 37 Stat. 555, *as amended by* Act of June 10, 1948, ch. 447, 62 Stat. 354 (1948). Subsection (c) of section 7501, providing that the procedural rights accorded employees in the competitive civil service in adverse actions apply also to preference eligible employees if they so elect, was added to the Lloyd-La Follette Act by ch. 447, 62 Stat. 354 (1948).

**3.** 12 U.S.C. § 248(*l*) is a codification of section 11(*l*) of the Federal Reserve Act, ch. 6, 38 Stat. 251 (1913). Although this section has never been amended, the codifier dropped the last sentence of the section, which exempts Board employees from coverage under the provisions of the Pendleton Act (the Civil Service Act), ch. 27, 22 Stat. 403 (1883), in codifying the section at 12 U.S.C. § 248(*l*). In the 1970 edition of the United States Code, the codifier explained in the codification note to section 248(*l*) that this was done because the President, in Executive Order No. 8743 (April 23, 1941), had exercised his power under 5 U.S.C. § 3301 (1970) to include employees of the Board in the competitive civil service, and that the dropped sentence was therefore obsolete. The codifier erred in his conclusion, however, since section 1(3) of the Executive Order specifically excepts from the competitive service those positions listed in Schedule A of the Civil Service regulations, and Schedule A lists all positions at the Board. 5 C.F.R. § 213.3124(a) (1978).

the Court cannot agree that the Board is exempt from the terms of the Veterans Preference Act and the Lloyd-La Follette Act. The Board argues that it is not subject to either Act because Congress has expressly exempted it from the laws governing the civil service. Specifically, the Board cites section 11(*l*) of the ·Federal Reserve Act, ch. 6, 38 Stat. 262–263 (1913), *see* note 3, *supra,* which provides that:

> . . . All such attorneys, experts, assistants, clerks, and other employees shall be appointed without regard to the provisions of the [Pendleton Act, ch. 27, 22 Stat. 403 (1883)] and amendments thereto, or any rule or regulation made in pursuance thereof . . .

and section 6(b) of the Banking Act of 1933, ch. 89, 48 Stat. 167:

> . . . and may leave on deposit in the Federal Reserve banks the proceeds of assessments levied upon them to defray its estimated expenses and the salaries of its members and employees, whose employment, compensation, leave, and expenses shall be governed solely by the provisions of this Act, specific amendments thereof, and rules and regulations of the Board not inconsistent therewith . . .

The Board's position, however, completely overlooks the sweeping provisions of the Veterans Preference Act, which was enacted subsequent to both of the statutes it cites. Section 2 of the Veterans Preference Act provides that:

> In certification for appointment, in appointment, in reinstatement, in reemployment, and in retention in civilian positions in all establishments, agencies, bureaus, administrations, projects, and departments of the Government, permanent or temporary, and in either (a) the classified civil service; (b) the unclassified civil

service; (c) any temporary or emergency establishment, agency, bureau, administration, project, and department created by Acts of Congress or Presidential Executive order; . . . preference shall be given to [those who meet the definition of preference eligible].[4]

Section 18 of the Act also provides that:

> All Acts and parts of Acts inconsistent with the provisions hereof are hereby modified to conform herewith . . .[5]

The United States Court of Appeals for this circuit affirmed the broad sweep of the Act in *Born v. Allen,* 110 U.S.App.D.C. 217, 291 F.2d 345 (1960), noting that: "The only exclusions from the Act's coverage are that it shall not apply to the legislative or judicial branches or to persons appointed to the executive branch by the President with the advice and consent of the Senate." *Id.* 110 U.S.App.D.C. at 219–20, 291 F.2d at 347–48. The Board is, of course, an executive agency, 5 U.S.C. §§ 104, 105 (1976), and plaintiff is not otherwise excluded. Thus, it must be concluded that the Board is bound by the provisions of the Veterans Preference Act, and should have afforded plaintiff all the procedural rights provided therein.

The Board, in addition, argues that it is not bound by the provisions of the Lloyd-La Follette Act, but this also is not the case. The Board's contention is that since the Lloyd-La Follette Act was enacted in 1912, and the provisions of the Federal Reserve Act and the Banking Act of 1933 cited above were subsequently enacted, the latter provisions supersede the Lloyd-La Follette Act and control.

The logic of this argument does not withstand scrutiny in the light of the chronology of the Act, however, since the section on which plaintiff relies, 5 U.S.C. § 7501(c)

---

The new codification note to section 248(*l*) in the 1976 edition of the U.S. Code, published after this case was filed, now acknowledges that all positions under the Board are in the excepted service.

4. For explanation of codification of this language, see historical and revision notes to 5 U.S.C. § 1302(c)–(d) (1976).

5. Section 18 was repealed by the recodification of Title 5 in 1964, Pub.L.No.89–554, § 8, 80 Stat. 378 (1966), but the recodification expressly provides that it is not intended to change the substance of any law it restates. Id. § 7(a).

(1976),[6] was added to the Lloyd-La Follette Act by way of a 1948 amendment. Act of June 10, 1948, ch. 447, 62 Stat. 354. Thus, this provision supersedes the above-cited provisions of the Federal Reserve Act and the Banking Act of 1933.

It could be argued that even in its amended form the Lloyd-La Follette Act is not broad enough to control, since repeals by implication are not favored, *Born v. Allen, supra,* 110 U.S.App.D.C. 220, 291 F.2d at 348, but this argument would carry little force, as a practical matter, given the fact that the provisions of the Veterans Preference Act immediately available to preference eligible employees facing adverse actions are more stringent than those they may choose to elect under the Lloyd-La Follette Act. The Court concludes, then, that 5 U.S.C. § 7501(c) (1976) governs.

■ The Court must agree, however, with the Board's second argument, that the procedural rights accorded plaintiff by the Board under its own procedures were substantially the same as those prescribed by section 7501 and the regulations pursuant thereto. 5 C.F.R. Part 752 (1978). The only notable difference between the two is that the regulations provide for an appeal to the Civil Service Commission and notification to the employee of his right to appeal, 5 C.F.R. §§ 752.202(f) & 752.203 (1978), while Board procedures provide only for several intra-agency appeal steps.[7] Since the Board has maintained the position that it is in the excepted service and not subject either to the terms of the Veterans Preference Act or the Lloyd-La Follette Act, it has provided no right, or notice of right, of appeal to its employees in adverse actions.

Had this defect resulted in any prejudice to plaintiff, he would have been in a position to seek a remedy from this Court. But, in fact, plaintiff had ample opportunity to appeal to the Commission. He could have appealed after his dismissal at the time he first became aware that he had, or might have, an appeal right to the Commission, 5 C.F.R. § 772.302(b) (1978), and he could have appealed from the final agency decision issued after his case was remanded to the agency for exhaustion of administrative remedies.[8] The fact is, though, that he never attempted to appeal to the Commission even though he was unquestionably aware of the possibility that he might be entitled to such an appeal.[9] We conclude, then, that the Board's failure to notify him of his appeal right did not prejudice plaintiff in any way and provides no basis for setting aside the adverse action.[10] *Mazaleski v. Treusdell,* 183 U.S.App.D.C. 182, 186 and n.3, 562 F.2d 701, 719 n.41 (1977); *Gratehouse v. United States,* 512 F.2d 1104, 1108 and n.3, 206 Ct.Cl. 288 (1975); *Raca-*

---

**6.** "This section applies to a preference eligible employee as defined by section 7511 of this title only if he so elects. . . ."

**7.** Policies and Procedures to be Followed Pending Adoption by the Board of Formal Statement of Policies and Procedures in Adverse Action Cases, para. 6 *et seq.* (hereinafter cited as Board Procedures).

**8.** 5 C.F.R. § 752.205(c) (1974), allowing appeals to the Commission either after dismissal or after completion of intra-agency appeals, has been revoked. Now an employee must appeal within 15 days of his dismissal. But in this case, where the agency did not inform the employee of his appeal rights, and, in fact, affirmatively denied that he had any such rights, the Commission would have been compelled to accept the appeal under 5 C.F.R. § 752.203(a) (1978). *See* 5 U.S.C. § 7701 (1976) (employee has "reasonable time" in which to file an appeal).

**9.** Plaintiff asserted the Board's failure to notify him of his appeal rights in count three of his complaint, filed with this Court prior to remand.

**10.** The same is true as to plaintiff's claim that the notice of adverse action was delivered to him a day late. Although regulations require that the notice be delivered on or before the effective date of dismissal, 5 C.F.R. § 752.202(f) (1978), plaintiff was timely informed of the adverse decision by telephone and was told a copy was available to him at the Board's offices. Again, plaintiff suffered no prejudice, and the fact that he took the next appeal step reveals that he was not delayed in noting his appeal beyond the filing date. Thus, there is no basis for voiding the adverse action. *Dozier v. United States,* 473 F.2d 866, 868 (5th Cir. 1973); *Wood v. United States Post Office Dept.,* 381 F.Supp. 1371, 1373 (N.D.Ill.1973), *aff'd,* 511 F.2d 1405 (7th Cir. 1975).

*nelli v. United Federation of Postal Clerks,* 456 F.2d 94, 96 (2d Cir. 1972); *McGucken v. United States,* 407 F.2d 1349, 1352, 187 Ct.Cl. 284 (1969), *cert. denied,* 396 U.S. 894, 90 S.Ct. 190, 24 L.Ed.2d 170 (1969).

■ As to plaintiff's claim that the notice of adverse action did not adequately apprise him of the charges against him, the Court observes that all of the reasons stated for his dismissal in the notice of adverse action were contained in the notice of proposed adverse action; that plaintiff, with the aid of counsel, has made detailed and sophisticated responses to the agency charges at every stage of this proceeding; and that plaintiff has demonstrated no prejudice to him from any alleged failure of the notice to inform him of the charges against him.[11]

> The purpose of the notice is:
>
> to afford the employee a *fair opportunity* to oppose his removal, and the charges must be considered with the view of determining whether plaintiff was informed of the basis of the proposed action with *sufficient particularity* to apprise him of allegations he must refute or acts he must justify. The technical rules of criminal proceedings are not applicable here, *and the facts and circumstances of a particular case are regarded as important in such an inquiry* . . . . (Emphasis in original.)

*Schlegel v. United States,* 416 F.2d 1372, 1376, 189 Ct.Cl. 30 (1969), *quoting Burkett v. United States,* 402 F.2d 1002, 1004, 185 Ct.Cl. 631 (1968). A glance at the administrative record is enough to confirm that plaintiff has been afforded more than fair opportunity to oppose his removal and that he has thoroughly understood the charges against him from the outset. *See* Federal Personnel Manual, Supplement 752–1, S6–2d(2) (1976).

■ Plaintiff also argues that under the due process clause of the fifth amendment he was entitled to a pretermination hearing before an impartial fact-finder, since the proposed agency action involved the possible deprivation of a property interest (his income and livelihood). This question has been settled by the Supreme Court in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), however, and requires no further comment by this Court. In *Arnett* the Supreme Court expressly held that the Constitution does not require a pretermination hearing for government employees in routine dismissal cases. *Id.* at 152, 94 S.Ct. 1633.

■ After his dismissal became final, plaintiff requested and was granted a post-termination evidentiary hearing, as is provided by Board procedures. Board procedures, para. 6(b). The Board selected a former Civil Service Commission administrative law judge (ALJ) to conduct the hearing and paid him on a per diem basis. Plaintiff argues that this type of pay arrangement may have predisposed the ALJ to decide in the Board's favor, since he might fear if he did not the Board would not hire him in the future. Because there was a possibility of bias, plaintiff concludes, he was denied his right to an impartial hearing.

Plaintiff overlooks the fact that Board procedures entitled him only to a hearing before a *Board employee.* The Board was going out of its way to assure fairness by having a non-Board employee conduct the hearing. In addition, the statutes on which plaintiff relies, 5 U.S.C. §§ 1305 & 3105 (1976), apply only to situations in which hearings are required under 5 U.S.C. §§ 556 & 557 (1976). But as 5 U.S.C. §§ 554(a)(2) & 7501 (1976) and 5 C.F.R. § 752.202(b) (1978) make clear, agencies are not required to hold hearings in adverse action cases. Thus, the Court concludes that these and

11. Plaintiff also argues that he was not given an opportunity to answer the charges in person as well as in writing, but the record clearly shows that he met personally with the Board's director of personnel at least twice after he received the notice of proposed action. Plaintiff's complaint is that the Board refused his eleventh hour request for *another* personal meeting, but there is no requirement that the Board grant an unlimited number of personal appearances.

plaintiff's other allegations that he was denied an impartial hearing are without merit.

■ Plaintiff's final allegation, that the Board's action in depriving him of access to its computer in March 1976 constituted a separate adverse action requiring advance notice and other procedural safeguards, is incorrect. There is no requirement that an agency provide an employee with the procedural rights triggered by an adverse action merely because it changes his work assignment or restricts his use of equipment. Such a change or restriction is not a removal, furlough without pay, or reduction in rank or pay, nor is it a suspension for more than 30 days. 5 C.F.R. § 752.201 (1978); Federal Personnel Manual, Supplement 752–1, S1–6(a) (1976). Therefore, the action was not an adverse action and plaintiff's allegation is without foundation.

*Conclusion*

After a thorough review of the record, this Court concludes that the Board's action in dismissing plaintiff was neither arbitrary nor capricious, was reached in accordance with relevant statutory and procedural requirements, and was not unconstitutional. In addition, the Court concludes that the Board's finding concerning plaintiff's unacceptable performance and unsatisfactory relations with coworkers constitutes such cause for dismissal as will promote the efficiency of the Board and the civil service. Consequently, plaintiff's motion for summary judgment must be denied, and defendant's cross-motion for summary judgment is granted. Judgment will be entered accordingly.