# ELDER ET AL. *v.* BRANNAN, SECRETARY OF AGRICULTURE.

NO. 474.

Argued April 11, 1951.—Decided May 7, 1951.

278

*Morton Liftin* argued the cause for the Secretary of Agriculture. With him on the briefs were *Solicitor General Perlman, Assistant Attorney General Baldridge* and *Samuel D. Slade. Acting Assistant Attorney General Clapp* was also on the brief in No. 473.

*Robert D. Elder* and *Greene Chandler Furman, pro se,* argued the cause and filed a brief. *C. L. Dawson* was also on the brief.

Mr. Justice Clark delivered the opinion of the Court.

These actions involve questions concerning the precise scope of rights to employment in the federal service granted by the Veterans' Preference Act of 1944. 58 Stat. 387, 5 U. S. C. (1946 ed.) §§ 851 *et seq.* The ultimate issues are two: (1) whether under § 12 of the Act veterans with temporary war-service appointments are entitled to retention preference over nonveterans with the equivalent of classified civil service status when reduction-in-force discharges are made; and (2) whether the reemployment rights of veterans lawfully discharged are governed by § 12 retention priorities or by other provisions of the Act.

We treat these cases together, as did the courts below, and shall refer to Elder and Furman as petitioners. Petitioners are honorably discharged veterans and as such are concededly entitled to whatever benefits the Act affords. They were appointed associate attorneys in the Office of the Solicitor of the Department of Agriculture in July and August 1943. At the time of their appointments, a civil service regulation was in effect under which all appointments as attorneys were to be limited to the duration of the war plus six months, and persons so appointed were not to acquire a classified (competitive) civil service status. On May 29, 1947, petitioners and eighteen other attorneys in the Department were notified

that, because of a reduction in force compelled by lack of funds, they would be separated from service on June 30 following. Nonveteran attorneys with the equivalent of classified status were to be retained. The selection was made on the basis of civil service retention-preference regulations—under § 12—which plainly required that nonveterans with classified status or its equivalent be given a higher retention priority than veterans without.

Plaintiffs appealed to the Commission, which subsequently found that their separation was in accord with the statute and regulations. Meanwhile, however, they instituted these actions in the District Court for the District of Columbia, alleging first that they had acquired a classified status, and hence were entitled under the regulations to a retention priority over nonveterans; second, that in any event, the statute gave veterans an absolute retention priority regardless of status, and that Commission regulations to the contrary were invalid.

While these actions were pending, the Department came into additional funds, and several attorneys not reached for separation resigned voluntarily or transferred. The Department then rehired nine of the attorneys previously separated, the first of whom took office on October 27, 1947. Some of the attorneys rehired were nonveterans with a lower reduction-in-force retention priority than that possessed by petitioners at the time all were separated. On this ground, the latter amended their complaints before the District Court to allege in addition that they had been deprived of a preferential right to "reemployment" or "reinstatement." The Secretary moved for a summary judgment, and the District Court granted the motion. On appeal, the Court of Appeals affirmed the judgment that petitioners' separation from the service was lawful. But it found that the allegations concerning violation of reemployment or reinstatement rights were well founded. The court

therefore reversed and remanded with directions that the Secretary be given leave to deny the facts alleged. 87 U. S. App. D. C. 117, 184 F. 2d 219. From this judgment, the parties filed cross-petitions for review. Petitioners sought review of the judgment that their separation was lawfully carried out. The Secretary sought review of the judgment that petitioners' allegations as to deprivation of reemployment or reinstatement rights stated a cause of action under the statute. We granted certiorari because of the obvious impact of these issues on federal employment policies. 340 U. S. 928 (1951).

For reasons outlined below, we agree that petitioners' separation from service was in full accord with the statute. We disagree with the holding that the allegations of the complaint are sufficient to state an unlawful deprivation of a preferential right to reemployment.

## I.

As the Court of Appeals pointed out, there is no merit in petitioners' contention that they had acquired a classified civil service status and were thus entitled under the regulations to retention preference over all nonveterans.[1]

---

[1] Executive Order 9063, issued February 16, 1942, and in effect at all times relevant, authorized the Civil Service Commission to formulate special procedures for the recruitment of personnel during the war, and further provided that

"[p]ersons appointed solely by reason of any special procedures adopted under authority of this order . . . shall not thereby acquire a classified (competitive) civil-service status, but, in the discretion of the Civil Service Commission, may be retained for the duration of the war and for six months thereafter." 3 CFR (Cum. Supp. 1943) 1091.

On March 16, 1942, the Board of Legal Examiners, functioning under the Commission, amended its regulations to provide that all appointment to attorney positions be effected under this Executive Order, and be limited to the duration of the war plus six months. 7 Fed. Reg. 2201. See also Executive Order 9230, 7 Fed. Reg. 6665, 3 CFR (Cum. Supp. 1943) 1201, 1202. This regulation was continued in

The validity of petitioners' discharge, therefore, turns on the validity of the Commission's retention-preference regulations. 5 CFR (Supp. 1947) § 20.3. These regulations were adopted pursuant to § 12 of the Veterans' Preference Act, 5 U. S. C. § 861, which reads in part as follows:

> "In any reduction in personnel in any civilian service of any Federal agency, *competing* employees shall be released in accordance with Civil Service Commission regulations which shall give due effect to tenure of employment, military preference, length of service, and efficiency ratings: *Provided*, . . . That preference employees whose efficiency ratings are 'good' or better shall be retained in preference to all other *competing* employees and that preference employees whose efficiency ratings are below 'good' shall be retained in preference to *competing* nonpreference employees who have equal or lower efficiency ratings . . . ." (Emphasis added.)

The regulations first define "competing" employees on the basis of tenure of employment. The highest priority is given Group A, which includes (1) employees having classified civil service status, and (2) those holding positions excepted from examination requirements and whose appointments are without time limitation. Group B, second in retention priority, includes employees without classified status or whose appointments are limited to the duration of the war plus six months. Group C is composed of employees appointed for one year or less. The regulations then classify employees within each group on

---

effect by § 17.1 (g) of the Board's regulations, 5 CFR (Cum. Supp. 1943) § 17.1 (g), and § 17.1 (g) remained in effect when, by Executive Order 9358 of July 1, 1943, 8 Fed. Reg. 9175, the functions of the Board were vested in the Commission itself. No plausible reason has been or could be advanced for holding this regulation invalid.

the basis of veterans' preference and efficiency ratings. Subgroups A–1, B–1 and C–1 include employees with both veterans' preference and efficiency ratings of "good" or better. Subgroups A–2, B–2 and C–2 include those with "good" or better efficiency ratings but without veterans' preference. Under these regulations, petitioners, as war-service employees, were classified B–1, and were separated while some nonveteran attorneys with an A–2 classification (permanent employees) were retained. The Secretary had no other choice, since the regulations group employees by tenure and limit the reach of veterans' preference to competing employees of the same group.

Petitioners contend that this feature violates the statute, that the proviso of § 12 plainly gives veterans with an efficiency rating of "good" or better an absolute preference over all other employees, with or without classified status or its equivalent. But the proviso, like the body of § 12, contains the term "competing" employees, which necessarily implies that a veteran's preference operates only within a defined group. And since the statute does not supply a definition, we must determine from the legislative history of the Act, and from prior legislation and regulations, whether the Commission's definition may reasonably be said to "carry into full effect the provisions, intent, and purpose [of the statute]." 5 U. S. C. § 868.

This Court made a similar examination in *Hilton* v. *Sullivan*, 334 U. S. 323 (1948). The decision in that case upheld the retention-preference regulations insofar as they granted veterans with classified status an absolute priority over nonveterans of the same status regardless of *length of service*. The Court stated that in the light of all pertinent history "no other interpretation of [§ 12] . . . can fairly be reached." *Id*. at 336. Since "length of service" and "tenure of employment" appear as parallel terms in the body of § 12, it can be argued that if the proviso eliminates length of service as a barrier to veter-

ans' preference, it also eliminates tenure. But this ignores a crucial difference in the historical treatment of these two factors. Executive orders and Civil Service regulations prior to 1944 had consistently disregarded length of service in giving veterans preference over non-veterans with the same tenure—a fact stressed in the *Hilton* case. *Id.* at 336–337. On the other hand, the regulations had just as consistently distinguished "competing" groups on the basis of tenure, and had confined the scope of veterans' preference to employees of the same group. As early as 1932, the Commission provided that reduction in force was to be carried out in inverse order of tenure, permanent employees to be separated last.[2] The rule was still in force at the time the Veterans' Preference Act of 1944 was passed. 5 CFR (Supp. 1943) § 12.304.

Moreover, the legislative history of the Act is barren of any indication that this long-established separation of "competing" employees on the basis of tenure was to be broken down and subordinated to veterans' preference. In general, the Act was designed to "give legislative sanction to existing veterans' preference" and to "give some additional strength" to that preference.[3] Additional rights granted were specifically brought to the Congress' attention. One addition which was stressed, for example, was the third proviso of § 12, which grants preference to veteran employees of an agency when that agency is replaced or any of its functions transferred to another

---

[2] Minute of the Civil Service Commission, August 11, 1932. See Civil Service Commission, Acts, Rules and Regulations (as amended to September 15, 1934), p. 54.

[3] Statement of Representative Starnes, author of the bill, Hearings before Senate Committee on Civil Service on S. 1762 and H. R. 4115, 78th Cong., 2d Sess. 8–9; statement of Representative Ramspeck, Chairman of the Civil Service Committee, 90 Cong. Rec. 3505 (1944).

administrative body.[4]   But, in the only interpretive discussion of the proviso here involved, Commissioner Flemming stated that it "simply continues what has been in practice throughout the entire Federal service since 1923."[5]   More important, two bills earlier proposed by veterans' organizations would have specifically granted the right which plaintiffs claim in this case—absolute preference in retention regardless of tenure.[6]   These bills were rejected in favor of § 12 as enacted, the language of which was proposed by the Commission itself.[7]   In sum, the Commission's retention regulations can hardly be called invalid for making a distinction on the basis of tenure when they reflect a long-standing definition of "competing" groups, when they were issued by the agency which proposed the statutory language finally adopted, and when Congress indicated no intent whatsoever to supply a new standard.

Two further points remain.   Petitioners contend that, apart from § 12, veterans were given an absolute preference by § 4 of the Act of 1912, 37 Stat. 413, and that the preference so granted was carried over by the saving clause in § 18 of the 1944 Act.   5 U. S. C. § 867.   The flaw in this argument, as the court below pointed out, is that § 4 by its terms was confined to the classified civil service.   Its features were subsequently applied, under Executive Orders, within the unclassified service, but as indicated above, temporary appointment veterans never had retention preference over permanent tenure nonvet-

---

[4] Hearings, *supra*, note 3 at 9–10.   For a specification of this and other additions to veterans' rights, see also, 90 Cong. Rec. 3503; S. Rep. No. 907, 78th Cong., 2d Sess. 2–4; H. R. Rep. No. 1289, 78th Cong., 2d Sess. 3–4.

[5] Hearings, *supra*, note 3 at 27.

[6] H. R. 5101, 76th Cong., 1st Sess.; H. R. 5147, 76th Cong., 1st Sess.

[7] H. R. Rep. No. 1289, *supra*, note 4 at 6.

erans. Alternatively, petitioners contend that § 2 of the 1944 Act in and of itself extends absolute preference to veterans with limited tenure. 5 U. S. C. § 851. But it seems apparent that § 2 gives no specific preference rights at all. The section contains only a general statement of policy, a listing of preferred groups, and a specification of federal positions covered. It provides that "preference shall be given" in certification for appointment, appointment, reinstatement, reemployment and retention; it does not delineate what that preference shall be. The details are spelled out in subsequent sections of the Act, retention preference being governed by § 12. Cf. *Hilton* v. *Sullivan, supra.* Section 2 was described throughout the legislative history as merely "defining the groups to whom preference was to be granted."[8]

Since retention rights are governed by § 12, and since the regulations are consistent with the statute, petitioners were properly separated from their positions in the federal service.

## II.

The complaint that plaintiffs were wrongfully denied preference in rehiring rests solely on the allegation that the Department reemployed attorneys with a lower classification on the retention register. The Court of Appeals concluded that this allegation, not denied by the Secretary, was sufficient to state a cause of action under the statute. It held that § 2 of the statute granted "reinstatement and re-employment" preference rights, and that these rights were measured by the retention-preference regulations under § 12. 87 U. S. App. D. C. 117, 120, 184 F. 2d 219, 222 (C. A. D. C. Cir. 1950). Neither of these holdings withstands analysis. Section 2, as has been indicated, grants no specific rights except insofar as it may be thought

---

[8] H. R. Rep. No. 1289, *supra,* note 4 at 3; S. Rep. No. 907, *supra,* note 4 at 2; 90 Cong. Rec. 3503.

to preserve, in conjunction with § 18, any rights previously arising from statute, executive order or regulation and not granted by the other sections of the 1944 Act.

Nor are we able to accept the ruling that reinstatement or reemployment preferences are to be measured by retention-preference regulations under § 12. Reemployment preferences are specially dealt with elsewhere in the Act. Section 15 provides that all preference eligibles who have been separated without fault on their part may—at their request—have their names placed on all appropriate registers or employment lists for positions for which they are qualified. 5 U. S. C. § 864. It further provides that their eligibility for reappointment is then governed by §§ 7 and 8 of the Act, dealing with appointments in general. 5 U. S. C. §§ 856, 857. The names of preference eligibles are placed on the appropriate registers or lists in accordance with their respective numerical ratings, which are augmented by 10 points in the case of disabled veterans, their wives, or unmarried widows of deceased veterans; 5 points in the case of other preference eligibles. 5 U. S. C. § 852. The appointing officer may pass over a veteran in favor of a nonveteran, but if he does so he must file in writing his reasons therefor, and the Commission must examine those reasons to determine their sufficiency. Section 15 further provides that no appointment shall be made from an examination register, except of 10-point preference eligibles, when there are three or more names of preference eligibles on any appropriate reemployment list for the position to be filled.

There is no persuasive reason why the provisions of § 15 are not applicable in this case. Petitioners make a twofold argument to the contrary: (1) that their right was to preference in "reinstatement" rather than in "reemployment," and that "reinstatement" preference is granted and governed by § 2; (2) that § 15 applies only to the competitive civil service, from which attorneys

were excepted by regulations taking effect May 1, 1947. 12 Fed. Reg. 2839, 5 CFR (Supp. 1947) § 6.4. Even if valid, the first contention is of no help to petitioners. "Reinstatement"—to the extent it had any peculiar meaning in civil service parlance prior to the time that 1944 Act was passed—meant reemployment of a person *upon formal request of the appointing officer.* 1 Fed. Reg. 602, 5 CFR §§ 9.1, 9.101 (1939).[9] The preference accorded veterans was that they might be reinstated without time limit, whereas a request for reinstatement of nonveterans had to come within specified periods after their separation. The term was not confined to reappointment to a position formerly held. An involuntarily separated employee could be reinstated in any part of the service, and the Commission was authorized to provide for similar reinstatement of any classified status employee. The apparent analogue of this type of reemployment is contained in § 13 of the 1944 Act, which provides that any preference eligible "who has resigned or who has been dismissed or furloughed" may be appointed to any position for which he is eligible "at the request of any appointing officer." 5 U. S. C. § 862. Petitioners would interpret § 2 as creating an entirely new and absolute right of preference in "reinstatement," not dependent upon the request of the appointing officer. Such an interpretation would not only stretch § 2 beyond its apparent and intended scope, but would in effect strike § 15 off the books, since no veteran would ever

---

[9] The provisions of Part 9 were superseded in part by the wartime service regulations adopted in 1943, § 18.8 of which provided that former employees with at least one year's service "may be reappointed by war service appointment to any position for which he meets the standards," and further provided that veterans who would have status for reinstatement under Part 9 could be reemployed without regard to length of prior service. 5 CFR (Supp. 1943) § 18.8.

have cause to use the limited preference in reemployment there granted.

The second claim, that § 15 covers reemployment only in positions within the competitive civil service, is clearly erroneous. The section provides that the name of a preference eligible be placed on appropriate registers and lists "for every position for which his qualifications have been established, as maintained by the Civil Service Commission, or as shall be maintained by any agency or project of the Federal Government . . . ."

Petitioners were lawfully separated from their positions in the Department of Agriculture. Their rights to preference in reemployment were governed by § 15 of the Act. They were entitled to those rights only if they requested that their names be placed on the appropriate reemployment list. Their complaints contain no allegation that they made such a request. And even if they did so, their preference rights were violated only if the appointing officer failed to follow the procedures specified by §§ 7, 8, 15 and pertinent regulations. Again, there are no such allegations in the complaints. The complaints as they stand are fatally defective in these respects, and unless petitioners on remand are able to supply the missing links in allegations and proof, the Secretary is entitled to a summary judgment.

The judgment of the Court of Appeals is affirmed in part and reversed in part, and the cases are remanded to the District Court for further proceedings in conformity with this opinion.

*So ordered.*

MR. JUSTICE BLACK dissents.