### Milton J. CUNNINGHAM
v.
### UNITED STATES.
No. 433-56.

United States Court of Claims.
March 2, 1960.

Littleton, J., and Fahy, Circuit Judge, sitting by designation, dissented.

**270**

Margaret C. Driscoll, Bridgeport, Conn., for plaintiff.

Mary R. McLean, Washington, D. C., with whom was Asst. Atty. Gen., George Cochran Doub, for defendant. Gerson B. Kramer, Washington, D. C., was on the brief.

LARAMORE, Judge.

Plaintiff, a veteran preference eligible, brings suit to recover the back pay of his civilian Government position in the Department of the Army from the date of his separation by reduction in force to date of judgment herein. Plaintiff contends that his reduction in force was brought about by a Civil Service regulation which was contrary to the terms of the Veterans' Preference Act of 1944, 5 U.S.C.A. § 851 et seq., and therefore invalid.

The plaintiff was in the military service of the United States from December 3, 1942, to February 11, 1946. He entered the civilian service of the United States on May 19, 1952, under an indefinite appointment in the career service. Indefinite appointments were the only kind of appointments which could then be made. This was because of the so-called Whitten Rider, 64 Stat. 1044, 1066. See Executive Order 10180, 15 Fed.Reg. 7745, U.S.Code Congressional and Administrative News 1950, p. 1671, and Civil Service Regulation 2.115(a), 15 Fed.Reg. 7747.

In September 1954, Congress substantially relaxed the restrictive requirements of the Whitten Rider by permitting the making of permanent appointments up to specified levels, and by abolishing certain other personnel restrictions therein. 68 Stat. 1115, 5 U.S.C.A. § 2001 et seq. Pursuant to this new legislation, Executive Order No. 10577, 19 Fed.Reg. 7521, issued November 22, 1954, authorized the institution of a new appointment system for the competitive service. Section 201 of the Executive Order provided:

"(a) Under such conditions as the Civil Service Commission may prescribe, all employees serving under indefinite appointments in the competitive service * * * shall * * * have their appointments converted to career-conditional appointments if they have had less than three years of creditable service, and to career appointments if they have had three or more years of such service since they were appointed: * * *

* * * * * *

"(d) The Commission shall define 'creditable service' and shall prescribe the conditions for completion of the period of creditable service required for career appointment.[1]"
5 U.S.C.A. § 631 note.

Pursuant to the authority granted by the above Executive Order, the Civil Service Commission issued Regulation sec. 2.301, effective January 23, 1955, 19 Fed.Reg. 8610, (5 C.F.R. sec. 2.301) which provided:

" * * * As used in this section, 'creditable service' means all substantial-

---

1. 19 Fed.Reg. 7525; 3 C.F.R. sec. 201(a) and (d), 1954 supplement.

ly continuous service with the Federal Government *since nontemporary appointment* in the competitive service, including any *intervening service in* the legislative or judicial branches, the excepted service, or *the military service.* * * *" (Italics supplied.)

Pursuant to Executive Order No. 10577, and the regulations of the Civil Service Commission promulgated thereunder, the plaintiff's status was, on January 23, 1955, converted from that of an indefinite employee to that of a career-conditional employee. This was because he had had less than three years of service since his appointment to his civilian position on May 19, 1952. If he had had three years of such service, he would have become a career employee, rather than a career-conditional employee. Also, under the Executive Order and the new regulations, he would become a career employee on May 19, 1955, when he would have completed three years of civilian service. But, as we shall see, he was separated on May 6, 1955, before he had completed the three years of civilian service.

The change in the plaintiff's status on January 23, 1955, from indefinite to career-conditional was, it may be supposed, an improvement. But, on the same day on which the plaintiff's status was thus improved, that of several of his fellow employees was improved still more. Under the restrictions of the Whitten Rider, they had all had indefinite appointments. But some of them had served in that status for three years or more and therefore they were eligible for, and received, career status under the Executive Order and the new regulations. This placed them in a higher retention register than the plaintiff, as a career-conditional employee, was in, and he was, therefore, reached in the reduction in force and they were not.

As we understand the situation, when the plaintiff and his fellows were all in the same status as indefinite employees, if a reduction in force had occurred, the plaintiff's status as a veteran would have given him retention rights over his fellows who were not veterans. The effect, then, of the Executive Order and the implementing regulations was to worsen the plaintiff's relative position as regarded retention rights, and the result was that he lost his job.

The plaintiff points to sections 2 and 12 of the Veterans' Preference Act, 58 Stat. 387, 390, 5 U.S.C.A. §§ 851, 861, which say:

"Sec. 2. In certification for appointment, in appointment, in reinstatement, in reemployment, and in retention in civilian positions in all establishments, agencies, bureaus, administrations, projects, and departments of the Government, permanent or temporary, and in either (a) the classified civil service; * * * preference shall be given to (1) those ex-service men and women who have served on active duty in any branch of the armed forces of the United States * * *.

"Sec. 12. In any reduction in personnel in any civilian service of any Federal agency, competing employees shall be released in accordance with Civil Service Commission regulations which shall give due effect to tenure of employment, military preference, length of service, and efficiency ratings: *Provided*, That the length of time spent in active service in the armed forces of the United States of each such employee shall be credited in computing length of total service; * * *."

With regard to section 2, supra, the Supreme Court in the case of Elder v. Brannan, 341 U.S. 277, 286, 71 S.Ct. 685, 690, 95 L.Ed.2d 939, held:

" * * * But it seems apparent that § 2 [Veterans' Preference Act] gives no specific preference rights at all. The section contains only a general statement of policy, a listing of preferred groups, and a specification of federal positions covered. It provides that 'preference shall be given' in certification for appointment, appointment, reinstatement, reem-

ployment and retention; it does not delineate what that preference shall be. The details are spelled out in subsequent sections of the Act, retention preference being governed by § 12. * * * Section 2 was described throughout the legislative history as merely 'defining the groups to whom preference was to be granted.'"

Plaintiff says, particularly with regard to the *Provided* clause of section 12, that under it he was entitled to a career appointment when the others who had had more than three years of civilian employment received their career appointments, and if he had received such an appointment, he would have had retention rights over them because he was a veteran.

A literal reading of section 12 tends to support the plaintiff's contention. But if his contention is correct, it would mean that a veteran, with long military service, would, on the first day of his incumbency in a civilian position in the Government, have retention rights by reason of length of service over all the non-veteran employees in the same line of work, unless their civilian service was longer than his military service. We do not think that Congress intended the Veterans' Preference idea to carry so far. We think the Executive, and his agent, the Civil Service Commission, must have been intended to have the power to make reasonable classifications of employees, on the basis of standards relating to the capacity of the employees to do their work. We think the Civil Service Commission had the power to classify employees who had had three years or more of experience in a field of civilian work, differently from those who had had less than three years' experience.

Moreover, it seems clear that section 12 merely provides that veterans be given preference in any reduction-in-force proceedings. Executive Order No. 10577 complained of has nothing to do with reduction in force. Rather, it is an order providing for appointments. Similarly, the regulation thereunder also has to do with appointments rather than retention, and neither the Executive Order nor the regulation thereunder is in conflict with section 12, supra.

The fact that the plaintiff came within a few days of becoming eligible for a career position, with its attendant retention preference for him as a veteran, makes his case seem hard. He does not claim that the regulations were written or administered with any intention to prejudice him. He was simply caught within the unavoidable generality of the rule which was applicable to a large number of persons. His rights were not violated.

The plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge and WHITAKER, Judge, concur.

LITTLETON, Judge (Retired) (dissenting).

The majority concedes that a literal reading of section 12 of the Veterans' Preference Act tends to support plaintiff's contention that his years of active military service must be counted in computing his "creditable service" for the purpose of determining his eligibility for a permanent career appointment under the 1954 amendment to the Whitten Rider and that the Civil Service regulation which permits only such service to be counted if it intervenes after civilian Government appointment, is invalid. But the majority points out that such an interpretation would mean that a veteran, with long military service prior to his Government civilian appointment, would, on the first day of his incumbency in a civilian position in the Government, have retention rights superior to all non-veteran employees in the same line of civilian work unless the non-veteran's civilian service was longer than the veteran's military service. In other words, such a veteran would be entitled to a permanent career appointment immediately if his prior military service exceeded three years. The majority is

of the opinion that Congress could not have intended veterans' preference to carry so far and that it must have intended the Executive and the Civil Service Commission to have the power to make reasonable classifications of employees on the basis of standards relating to the capacity of the employees to do their work and that therefore the Commission had ample power to classify employees with three years' or more experience in a field of civilian work differently from those with less than three years' experience. I believe that the regulation in question does not accomplish what the majority thinks it does and that, in fact, it permits, under certain circumstances, precisely the unthinkable situation described by the majority opinion. The regulation provides:

"  *   *   * As used in this section, 'creditable service' means all substantially continuous service with the Federal Government *since non-temporary appointment in the competitive service,* including any *intervening* service in  *   *   * the military service.  *   *   *" [Italics supplied.]

Under the terms of the above regulation a person given a career conditional appointment in the civilian Government service who is called to active military service on the day following his appointment and who serves for three years on active duty and then returns to his Government position, would, on the day of his return to civilian Government duty, be entitled to have his position converted to a permanent career appointment. His military service must be counted as "creditable service" since it is "intervening service in  *   *   * the military service." The question immediately presents itself, why should this veteran's military service count toward a career appointment and another veteran's military service of equal length not be counted simply because the latter veteran's military service occurred prior to his civilian Government appointment?

It appears to me that the regulation in question not only denies to veterans in

general a right to count military service given to them by the literal language of section 12 of the Veterans' Preference Act, but it also discriminates between veterans whose military service occurs before their appointment to the civilian Government service and those whose military service occurs after such appointment.

Subsection (e) of the 1954 amendment to the Whitten Rider provides as follows:

"(e) This section does not and shall not be construed to amend or modify the Veterans' Preference Act of 1944  *   *   * as amended."

The Conference Report containing a statement of the Managers on the Part of the House with respect to H.R. 2263, reveals that the Civil Service Commission had informed Congress in general concerning the manner in which it proposed to administer the new legislation to give to Government employees permanent career appointments to the extent permitted by the Act. The Commission advised Congress that Government employees serving in indefinite appointments with less than three years of service would have their appointments converted to a "new type of appointment" to be known as "career-conditional", and that indefinite appointees with three or more years of service would have their appointments converted to permanent career appointments. The report said nothing whatsoever about how the Commission intended to count active military service in computing total length of creditable service for the purpose of determining an employee's right to a permanent appointment. In the light of subsection (e) quoted above, it would seem that Congress expected the Commission to include *all* military service *whenever* it occurred in computing length of service for the purpose of the new legislation. I cannot believe that Congress intended that such military service could be counted in the case of some veterans and not in the case of other veterans, depending solely on *when* the military service occurred, and I think that if it was to be counted at all, Con-

gress would certainly have wanted service in World War II and in the Korean conflict to be counted. All of that service had taken place prior to the enactment of the 1954 amendment to the Whitten Rider and prior to civilian Government appointment in the case of most veterans.

The majority suggests another ground for its conclusion with which I cannot agree. It says that section 12 of the Veterans' Preference Act provides for preference only in reduction in force proceedings, and that the Executive Order and the regulation of the Commission issued to implement the 1954 amendment to the Whitten Rider had nothing to do with reductions in force but only with the making of appointments, so that neither the Executive Order nor the regulation can be in conflict with the Veterans' Preference Act. If the majority is right, then there existed no valid statutory reason for counting military service time at all in determining the qualifications of Government employees for permanent appointments under the Whitten Rider amendment, and both the executive order and the regulation which required the counting of "intervening service * * * in the military service" in determining the right of a person to a permanent career appointment represents a curious discrimination against non-veteran Government employees not required by the Veterans' Preference Act nor the Whitten Rider amendment.

I am of the opinion, however, that the majority's reading of section 12 of the Veterans' Preference Act is unduly narrow. I think that when it is read in connection with section 2, which provides for a general preference in appointment, section 12 means that where length of total service becomes an important factor in any Government personnel action, veterans shall be entitled to have counted all of their active military service whenever it occurs. Furthermore, although the conferring of permanent appointments under the 1954 legislation has nothing literally to do with reductions in force, retention registers in all Government agencies will reflect any action taken by those agencies in connection with the making of career conditional, temporary, or permanent career appointments, because the agency action in the case of an individual has the immediate effect of placing him on a particular retention register in the event of any reduction in force. The moment that plaintiff's position was converted from indefinite to career conditional, he was placed in a more vulnerable retention register in relation to his fellow employees than he was in before the Whitten Rider amendment regulations were applied to his employing agency. The conversion of an appointment to career conditional or to permanent, certainly affects the appointee's retention within the meaning of section 2 of the Veterans' Preference Act, and his relative retention position in the agency table of organization has an intimate and undeniable relation to any reductions in force which the agency is compelled to make.

I am of the opinion that the Veterans' Preference Act and subsection (e) of the 1954 legislation require the counting of all active military service in determining eligibility for career appointments in the civilian Government service whenever that military service takes place, either before or after appointment in the civilian Government service. Accordingly, I think the regulation of the Civil Service Commission is contrary to law and that plaintiff is entitled to recover.

FAHY, Circuit Judge, sitting by designation, joins in the foregoing dissenting opinion.