Raymond E. DODD, Petitioner,

v.

TENNESSEE VALLEY
AUTHORITY, Respondent.

Appeal No. 84–1645.

United States Court of Appeals,
Federal Circuit.

Aug. 15, 1985.

Carrol D. Kilgore, Branstetter, Kilgore, Stranch & Jennings, Nashville, Tenn., for petitioner. With her on brief was R. Jan Jennings, Nashville, Tenn.

James E. Fox, Associate Gen. Counsel, Tennessee Valley Authority, Knoxville, Tenn., for respondent. With him on brief were Herbert S. Sanger, Jr., Gen. Counsel, Justin M. Schwamm, Sr., Asst. Gen. Counsel and Brent R. Marquand, Knoxville, Tenn.

Before FRIEDMAN, DAVIS, and BENNETT, Circuit Judges.

BENNETT, Circuit Judge.

Raymond Earl Dodd appeals the final order of the Merit Systems Protection Board, 21 M.S.P.R. 300 (1984), declining to review the presiding official's initial decision of January 30, 1984, affirming Dodd's separation by a reduction-in-force action of the Tennessee Valley Authority (TVA). We affirm.

BACKGROUND

Dodd began his career with TVA in 1975 working as a journeyman engineer at Watts Bar Nuclear Plant in Spring City, Tennessee. He received several promotions, becoming, in May 1978, the super-

visor of one of the two electrical engineering units in the project engineering section of the Hartsville (Tennessee) Nuclear Plant, a management scale M–5 position.

In 1982 TVA's power sales were adversely affected by the recession which dominated the Tennessee Valley economy. Faced with projections of reduced growth in power demand, the TVA board of directors, as authorized by 16 U.S.C. § 831a(g) (1982), responded in part by deferring further construction of the Hartsville Nuclear Plant.[1] A reorganization took place between March and October 1982, changing the function from active construction to maintenance and reducing the work force from 3,000 to 500. There is no issue in this case as to the correctness of the change in TVA's mission. The reorganization drastically affected the engineering activity, reducing the number of assistant construction engineer and supervisor positions from 22 to 3.

As part of the reorganization, TVA created a new position, "Supervisor, Engineering Unit," in order to combine all of the engineering disciplines under a single supervisor. Based on seniority, the new site manager, William T. Quinn, selected Edward D. Loope to fill the position. While all of the remaining engineering supervisors, including Dodd, were minimally qualified, Loope had the longest length of service with TVA.

In early March 1982 TVA undertook a voluntary placement program, soliciting the preferences of those likely to be affected by the impending reduction in force. Despite TVA's efforts, it was unable to accommodate the desires of every employee. Some of the engineering supervisors were separated and others were demoted. TVA offered Dodd a position at its Watts Bar Nuclear Plant which he refused because it would have been a demotion (and a concomitant reduction in annual salary from $45,645 to $42,000).

In addition to its voluntary placement program, TVA helped its employees to find jobs elsewhere. Although notified of his reduction in force in September 1982, TVA worked with Dodd in setting the effective date of his separation as October 22, 1982, so that he would not have a break in service during the transition to a new job with the Corps of Engineers.

Dodd appealed his separation to the board, alleging that TVA (1) violated 5 C.F.R. § 351.403 (1982) by defining his competitive level too narrowly, and (2) violated 5 U.S.C. §§ 2301(8)(A) and 2302(b)(11) (1982) by taking arbitrary action in derogation of the merit system principles. The presiding official in an initial decision, after a hearing, affirmed the reduction-in-force action, finding that TVA followed the requisite procedures and that Dodd failed to establish any prohibited personnel practice. The presiding official also noted that as an excepted service employee, Dodd had no assignment rights to the new position which was in a different competitive level from his own. Thus, the presiding official determined that the board was without authority to review TVA's selection of Loope for the new position. The board denied Dodd's petition for review, thus making the initial decision final pursuant to 5 C.F.R. § 1201.113(b).

## DISCUSSION

In his appeal before this court, Dodd challenges the board's determination that "he has no right of assignment to a position in another competitive level," and presents alternative grounds in urging the court to reverse the board. First, he maintains that, even assuming that he is an excepted service employee, the Veterans' Preference Act of 1944 entitles him to an assignment to the new position. Second, he maintains that he is a competitive service employee and as such 5 C.F.R. § 351.703 requires TVA to assign him to the new

1. *See* TVA Ann.Rep. 2 (1982). 16 U.S.C. § 831h (1982) requires the TVA board of directors to file an annual report with the President and Congress. The report is subject to judicial no-

tice. *E.g., Illinois Central Railroad Co. v. Tennessee Valley Authority,* 445 F.2d 308, 310 n. 4 (6th Cir.1971).

position. For convenience of discussion, we will address the two challenges in reverse order.

## I

If an employee satisfies the requirements of 5 C.F.R. § 351.703,[2] an agency is required to assign him to a position "in another competitive level in his competitive area" rather than separate him. The critical inquiry in determining whether Dodd comes within the ambit of 5 C.F.R. § 351.703 is whether TVA employees are included in the competitive service[3] as defined by 5 U.S.C. § 2102.[4]

██ As a government corporation, 16 U.S.C. §§ 831, 831r, TVA is an agency in the executive branch, 5 U.S.C. § 105, and as such would be included in the competitive service unless it is "specifically excepted ... by or under statute," 5 U.S.C. § 2102(a)(1)(A), by the Office of Personnel Management under 5 C.F.R. § 6.1, or from the Civil Service Act requirements, 5 C.F.R. § 1.4(a). We believe that it is specifically exempted. 16 U.S.C. § 831b provides for the appointment of TVA employees without regard to the civil service laws. Dodd concedes that this provision exempts TVA from conditioning its appointments on the passage of a competitive examination. The competitive examination is the touchstone of the competitive service.[5] *See* 5 U.S.C. §§ 2102 note, 3304, 3361; 5 C.F.R. § 2.1. Thus, we think that it is clear beyond peradventure that TVA employees are in the excepted service, not the competitive service. *See Pulley v. Tennessee Valley Authority,* 368 F.Supp. 90, 93 (M.D.Tenn. 1973); *accord Wise v. Tennessee Valley Authority,* 24 M.S.P.R. 166 (1984); *Adams v. Tennessee Valley Authority,* 1 MSPB 86, 1 M.S.P.R. 91 (1979). Accordingly, 5 C.F.R. § 351.703 does not require TVA to assign Dodd, an excepted service employee, to the new position. *See Slatem v. Department of Defense,* 6 MSPB 623, 7 M.S. P.R. 9 (1981).

## II

As a preference eligible employee within the meaning of 5 U.S.C. § 3501(a)(3)(B), the Veterans' Preference Act of 1944 § 12, 5 U.S.C. § 3502(c), entitles Dodd to a retention to which he claims entitlement is in his competitive area, the Hartsville Nuclear Plant Branch; and (3) as a preference eligible employee he is in a higher subgroup than Loope, a nonpreference eligible employee, *see* 5 C.F.R. § 351.501(f) and (g).

---

**2.** 5 C.F.R. § 351.703 (1982) states:

"(a) An agency shall assign under § 351.603 a group I or II employee in a position in the competitive service, rather than furlough or separate him, to a position in the competitive service in another competitive level in his competitive area which requires no reduction, or the least possible reduction, in representative rate when a position in the other competitive level is held by an employee:

"(1) In a lower subgroup; or

"(2) With lower retention standing in a position from which the group I or II employee was promoted or an essentially identical position.

"(b) Each employee's assignment rights shall be determined on the basis of the pay rates in effect on the date of issuance of specific notices of reduction in force, except that when it is officially known on the date of issuance of notices that new pay rates have been approved and will become effective by the effective date of the reduction in force, assignment rights shall be determined on the basis of the new pay rates."

**3.** On his appeal form to the board, Dodd certified that he was in the excepted service and he has never retracted his statement.

**4.** Dodd satisfies the other section 351.703 requirements: (1) he is a group I employee as defined by section 351.501(b); (2) the new posi-

**5.** When Congress enacted the Tennessee Valley Authority Act of 1933, ch. 32, § 3, 48 Stat. 58, 59–60, the civil service was divided into the classified service and unclassified service, the terms having their roots in the (Pendleton) Civil Service Act, ch. 27, 22 Stat. 403 (1883). The part of the civil service in which a position belonged was determined by whether a competitive examination was required for the appointment to the position. The classified service consisted of those positions in which an examination was a prerequisite to appointment. *E.g., Reeber v. Rossell,* 106 F.Supp. 373, 377 n. 8 (S.D.N.Y.), *modified on other grounds,* 200 F.2d 334 (2d Cir.1952). In the Civil Service Retirement Act Amendments of 1966, Pub.L. No. 89–554, 80 Stat. 378, Congress substituted, without any change in meaning, the terms "competitive service" and "excepted service." *See* 5 U.S.C. §§ 2102(c), 2103(b).

tion preference.[6] Dodd contends that the retention preference is absolute, and that TVA violated his statutory right by selecting Loope, a nonveteran, to fill the new position. TVA maintains that such a contention is contrary to the statute, as well as applicable precedent. Thus, we must determine the breadth of the statutory entitlement, mindful of the historic national policy favoring veterans.[7] *See Finch v. United States*, 179 Ct.Cl. 1, 4 (1967).

In support of his contention, Dodd relies upon *Hilton v. Sullivan*, 334 U.S. 323, 339, 68 S.Ct. 1020, 1027, 92 L.Ed. 1416 (1948), in which the Court characterized the Veterans' Preference Act as embodying "the long standing *absolute* retention preferences of veterans." (Emphasis added.) But, a close reading of the opinion reveals that the Court was not addressing whether the Act entitles veterans to an absolute retention under all circumstances. *Fass v. Gray*, 197 F.2d 587, 591 (D.C.Cir.), *cert. denied*, 344 U.S. 839, 73 S.Ct. 39, 97 L.Ed. 653 (1952). In *Hilton*, the Department of the Navy furloughed a nonveteran employee with 12 years of service. The employee brought a declaratory judgment action to establish his employment status, claiming that he should have been retained in preference to veterans with substantially shorter lengths of service. The Court determined

that the retention preference was absolute in that it is not qualified by *length of service. See* 334 U.S. at 336–37, 68 S.Ct. at 1026; *see also Elder v. Brannan*, 341 U.S. 277, 283, 71 S.Ct. 685, 688, 95 L.Ed. 939, *reh'g denied*, 341 U.S. 956, 71 S.Ct. 1012, 95 L.Ed. 1377 (1951).

■ When an agency conducts a reduction in force, the Veterans' Preference Act entitles a preference eligible "to be retained in preference to other competing employees."[8] 5 U.S.C. § 3502(c). In *Elder*, the Court stated that "the term 'competing' ... necessarily implies that a veteran's preference operates only within a defined group." 341 U.S. at 283. Pursuant to sections 1302(b), 1302(c), and 3502(a), the Office of Personnel Management has prescribed regulations concerning the scope of competition which limit the term "competing." *See* 5 C.F.R. § 351.401. Competitive area, 5 C.F.R. § 351.402, and competitive level, 5 C.F.R. § 351.403, determine the scope of competition. Through the use of these two criteria an agency identifies that group of employees which is subject to release as a result of a reduction in force. Out of the group identified for release, the agency determines which employees it will actually release on the basis of retention standing.[9] *See* 5 C.F.R. § 351.401. Be-

6. The fact that Dodd is an excepted service employee has no effect on his retention preference rights. 5 U.S.C. § 3501(b) states, "this subchapter (retention preference) applies to each employee in or under an Executive agency."

7. In 1865 Congress granted employment preferences to disabled veterans. S.Con.Res. 27, 13 Stat. 571. A few years later Congress favored the veterans with retention rights, providing: "That in making any reduction of force in any of the executive departments, the head of such department shall retain those persons who may be equally qualified who have been honorably discharged from the military or naval service of the United States, and the widows and orphans of deceased soldiers and sailors." Ch. 287, 19 Stat. 143, 169 (1876). Subsequently, Congress expanded these retention rights, stating: "no honorably discharged soldier or sailor whose record in said department is rated good shall be discharged or dropped, or reduced in rank or salary." Ch. 350, 37 Stat. 360, 413 (1912). With the desire of broadening and strengthening veterans' preferences, Congress

enacted the Veterans' Preference Act of 1944, ch. 287, 58 Stat. 387. *See Preference in Employment of Honorably Discharged Veterans Where Federal Funds Are Disbursed: Hearings on S. 1762 and H.R. 4115 Before the Senate Comm. on Civil Service*, 78th Cong., 2d Sess. 8 (1944) (statement of Rep. Starnes).

8. 5 C.F.R. § 351.203 defines competing employee as "an employee in tenure group I, II, or III." *See generally* 5 C.F.R. §§ 351.501–.502 (defining the tenure groups and subgroups for the competitive and excepted service).

9. In view of the fact that Dodd no longer challenges the manner in which TVA established his competitive area and competitive level, a detailed delineation of the two scope-of-competition criteria is unnecessary. For a discussion of scope of competition, retention standing and release from competitive level, see Note, *Reduction in Force: A Guide For the Uninitiated*, 44 Geo.Wash.L.Rev. 642, 648–57 (1976). *See also* P. Broida, *A Guide to Merit Systems Protection Board—Law & Practice* 446–49 (2d ed. 1985).

cause TVA placed Dodd in a single-person competitive level, there were no employees against whom he could compete for retention. Thus, the section 3502(c) entitlement to retention preference over competing employees is inapplicable to Dodd.

The specification of a competitive area and a competitive level within which employees are required to be found in order to be considered in competition with one another is not a novel one. *See Finch v. United States,* 179 Ct.Cl. at 6; *Bashein v. United States,* 279 F.2d 255, 257, 150 Cl.Ct. 138 (1960); *Leeds v. Rossell,* 101 F.Supp. 481, 483 (S.D.N.Y.1951); 38 Op.Att'y Gen. 79, 83 (1934). The underlying policy of limiting a veteran's retention rights by the two scope-of-competition criteria is to avoid the anarchy that might result if all federal employees were affected by every reduction in force. *See Grier v. Department of Health & Human Services,* 750 F.2d 944, 946 (Fed.Cir.1984); 44 Geo.Wash.L.Rev. at 649.

■ Dodd also contends the section 3502(c) retention preference required TVA to adopt provisions granting him, as a preference eligible, assignment rights to the new position. 5 C.F.R. § 351.705(a), however, states "an agency *may, in its discretion,* adopt provisions...." (Emphasis added.) The regulation, on its face, is not mandatory, but permissive; and we will not frustrate its clear meaning "by reading the law as if it were the gospel according to Lewis Carroll." *See Eyler v. Commissioner of Internal Revenue,* 760 F.2d 1129, 1133 (11th Cir.1985) (Smith, J., sitting by designation). Further, the Office of Personnel Management exercised its discretion properly by adopting regulations which treated competitive service and excepted service employees differently. The regulations in question do not run afoul of the Veterans' Preference Act, a question raised but not resolved by one of our predecessor courts. *See Keener v. United States,* 165 Ct.Cl. 334, 342–43 (1964).

The decision of the board affirming the TVA action was correct as a matter of law and not arbitrary, capricious, or otherwise so defective as to require that it be set aside. 5 U.S.C. § 7703(c).

AFFIRMED.