George NOBLE, Petitioner,

v.

**TENNESSEE VALLEY AUTHORITY, Respondent.**

No. 88–3436.

United States Court of Appeals, Federal Circuit.

Dec. 22, 1989.

Jay E. Emerson, Jr., Higgs & Conchin, Huntsville, Ala., for petitioner.

Ronald E. Klipsch, Tennessee Valley Authority, Knoxville, Tenn., for respondent.

With him on the brief were Edward S. Christenbury, General Counsel, Justin M. Schwamm, Sr., Asst. General Counsel and Harriet A. Cooper, Sr. Litigation Atty.

Before MARKEY, Chief Judge, RICH, NIES, NEWMAN, BISSELL, ARCHER, MAYER and MICHEL, Circuit Judges, and BENNETT and FRIEDMAN,* Senior Circuit Judges.

## ORDER

ARCHER, Circuit Judge.

This petition for review arises from the decision of the Merit Systems Protection Board (MSPB or Board), Docket No. AT03518810283 (June 24, 1988), sustaining the separation of George Noble by reduction-in-force (RIF) from the Tennessee Valley Authority (TVA).

A. Noble, a "preference eligible" as defined by 5 U.S.C. § 2108 (1988), was employed by the TVA at its Bellefonte Nuclear Plant in Hollywood, Alabama, until August 30, 1985, when he and eighteen other cement masons in his competitive level were separated by RIF. Noble challenged his separation by filing an Equal Employment Opportunity (EEO) complaint within the TVA alleging that he had been discriminated against on the basis of both age and race. Following the agency's denial of his EEO complaint on February 10, 1988, Noble appealed to the MSPB on the grounds set forth in his EEO complaint and, as well, alleging that the TVA had illegally failed to recognize and honor his reemployment rights under the Veterans' Preference Act of 1944 (VPA) (codified at 5 U.S.C. §§ 1302, 2108, 3305, 3308–3318, 3320, 3351, 3363, 3501–3504, 7511–7513, and 7701 (1988)). Noble's claim to reemployment rights relates to the failure of TVA to rehire him in October 1985.

The Board characterized Noble's appeal as a challenge to the *bona fides* of the agency's RIF action and, after finding the agency's procedures to be in accordance with law, denied Noble's appeal. Although Noble specifically raised the issue, the Board did not consider his claim that the TVA had violated his reemployment rights under 5 U.S.C. § 3315 (1988).

In this court, Noble has abandoned his discrimination claims, instead basing his petition solely on the failure of the MSPB to require the TVA to honor his reemployment rights under the VPA. Accordingly, this is no longer a "mixed" case and jurisdiction over this matter lies, if at all, in this court. *See* 5 U.S.C. § 7703(b)(1) (1988); 28 U.S.C. § 1295(a)(9) (1982); *cf.* 5 U.S.C. § 7703(b)(2) (1988); *Williams v. Department of Army,* 715 F.2d 1485 (Fed.Cir. 1983) (*in banc*) (Federal Circuit has no jurisdiction to review MSPB decisions involving discrimination claims).

B. Our appellate jurisdiction is governed by 28 U.S.C. § 1295 (1982) which states, in part, that this court has "exclusive jurisdiction ... of an appeal from a final order or final decision of the [MSPB], pursuant to sections 7703(b)(1) and 7703(d) of title 5[.]" 28 U.S.C. § 1295(a)(9). Implicit in this grant of authority, however, is the limitation that we may review the Board's decisions regarding only those matters over which the Board itself has subject matter jurisdiction. *Maddox v. Merit Sys. Protection Bd.,* 759 F.2d 9, 10 (Fed.Cir.1985); *see also* P. Broida, *A Guide to Merit System Protection Board Law & Practice* 1487 (1989) ("It is significant in determining whether the Federal Circuit has jurisdiction in an appeal to first determine whether the Board properly has jurisdiction...."). Therefore, unless the MSPB was authorized to consider Noble's claim that the TVA violated his VPA reemployment rights, we are without power to entertain his petition for review on that issue.

As we have often stated, the MSPB has no jurisdiction except that granted to it by "law, rule, or regulation." 5 U.S.C. § 7701(a) (1988); *see, e.g., Manning v. Merit Sys. Protection Bd.,* 742 F.2d 1424, 1426 (Fed.Cir.1984); *Thomas v. United States,* 709 F.2d 48, 49 (Fed.Cir.1983); *cf. Lackhouse v. Merit Sys. Protection Bd.,* 773 F.2d 313, 315–16 (Fed.Cir.1985). A general listing of the Board's subject matter juris-

---

* Judge Friedman took senior status on November 1, 1989.

diction is set forth in 5 C.F.R. § 1201.3(a) (1989).

◾ In this case, Noble has cited no "law, rule, or regulation" authorizing an appeal to the MSPB by a preference eligible seeking reemployment by the TVA based on an alleged violation of his priority rights under the VPA, and none exists. While the TVA is required by statute to honor the reemployment priority rights of preference eligibles pursuant to the VPA, *see* 5 U.S.C. §§ 3315, 3316 and 3320 (1988), neither the VPA nor the regulations promulgated pursuant to the VPA, *see* 5 U.S.C. § 1302 (1988), contain any provision granting Noble and others similarly situated the right to appeal an alleged violation of these rights to the MSPB.

◾ An appeal to the MSPB by a preference eligible against whom an "adverse action" has been taken under 5 U.S.C. §§ 7511–7513 (1988) is authorized by section 7513(d). These "adverse actions," however, do not include a failure to rehire following separation by RIF. Likewise, the appeal right set forth in 5 C.F.R. § 330.209, which provides that "[a]n individual who believes that his or her reemployment priority rights under this subpart have been violated ... may appeal to the [MSPB]," does not apply to one in Noble's situation. Subpart 330 covers only those individuals seeking reemployment within the "competitive" service, 5 C.F.R. § 330.203, from which the TVA is excepted. *See Dodd v. TVA*, 770 F.2d 1038, 1040 (Fed.Cir.1985),[1] (positions within the TVA are within the "excepted," not the "competitive," service). The reemployment and appeal rights set forth in subparts 302, 352, and 353 of 5 C.F.R. similarly do not apply to persons in Noble's status. The provisions of these subparts are tailored to specific factual situations, none of which involves reemployment following separation by RIF from the TVA.

◾ Accordingly, because there is no "law, rule, or regulation" authorizing the Board to adjudicate Noble's alleged violation of his VPA reemployment rights, the Board was without subject matter jurisdiction to consider that portion of his appeal. Because the Board lacked jurisdiction over Noble's VPA reemployment rights, which is the only issue before this court (all other matters raised before the MSPB being abandoned), we, as well, are without jurisdiction over Noble's petition for review. If Congress or the Office of Personnel Management had determined that preference eligibles of Noble's status should be allowed to seek redress of violations of their reemployment rights by appealing to the MSPB, they could have so provided. Neither has done so at this time and we are without authority to prescribe such a procedure.

Accordingly, IT IS ORDERED that the appeal be dismissed.

BENNETT, Senior Circuit Judge, dissenting, with whom FRIEDMAN, Senior Circuit Judge, and NEWMAN, Circuit Judge, join.

I respectfully dissent from the order. As background, petitioner Noble, an employee in the excepted civil service of the United States, 5 U.S.C. § 2103 (1988), with the Tennessee Valley Authority, was separated from his position by a reduction in force no longer contested. He later asserted, but was denied, his right to be rehired pursuant to his entitlements under miscellaneous provisions of the Veterans' Preference Act of 1944 (VPA), as amended, and the Civil Service Reform Act of 1978 (CSRA). *See* 5 U.S.C. §§ 1302, 3315–3316, 3501 (1988). Hence this appeal. It is uncontested that Noble is a veteran as defined by law, 5 U.S.C. § 2108 (1988), and as such was a preference eligible employee of

---

1. In *Dodd* we held that a preference eligible could appeal to the MSPB on the basis of an alleged violation by the TVA of his *retention* priority rights as provided by 5 C.F.R. § 351.901 (1988). Retention rights, however, are separate and distinct from the reemployment rights Noble seeks to assert in this case. *See Elder v.*

*Brannan*, 341 U.S. 277, 286–89, 71 S.Ct. 685, 690–91, 95 L.Ed. 939 (1951). Therefore, section 351.901 does not provide an avenue by which Noble may appeal to the MSPB based on an alleged violation of his VPA reemployment rights.

the government. The fact that he occupied an excepted position is irrelevant to his entitlement as a veteran to preference in hiring, retention, or rehiring over nonpreference employees. *Cf. Dodd v. TVA*, 770 F.2d 1038, 1041 nn. 6 & 7 (Fed.Cir.1985).

The sweep of veteran's preference law in our society for reemployment of a qualifying veteran is very broad. 38 U.S.C. §§ 2021–2026 (1988). Enforcement of reemployment rights where the employer is a private employer, a state or one of its political subdivisions, can be had by resorting to the authority of a United States district court. 38 U.S.C. § 2022. However, since Noble, a federal government employee, had the status of a preference eligible by reason of military service, he was required to turn to the Merit Systems Protection Board (MSPB) for enforcement of his statutory right to be rehired ahead of those without such statutory preference. In his appeal to the MSPB, petitioner raised the reemployment preference issue four times but the MSPB did not address it. The appeal was disposed of on grounds mentioned in the order, which are no longer in issue. In *Noble v. TVA*, 876 F.2d 1580 (Fed.Cir.1989), we simply remanded for findings by the MSPB on the merits of the reemployment claim which the Board had not decided.

The order now at issue would prohibit this veteran from establishing his claim on the merits before the MSPB and, implicitly, from review by this court. It does so by contending that Noble could point to no "law, rule, or regulation" which authorizes him to appeal to the MSPB. 5 U.S.C. § 7701(a) (1988). It is submitted here that this is not so. The authorization for Mr. Noble's appeal to the MSPB is the Veterans' Preference Act itself, which gives Mr. Noble his reemployment rights, together with the Civil Service Reform Act, which, as construed by the Supreme Court, establishes the MSPB as the exclusive forum in which those rights can be enforced.

## I.

The statutes and regulations demonstrate Congress intended that the MSPB shall have powers essentially exclusive in nature for administrative adjudication of personnel disputes in the government when an agency's action is tested by an employee who believes he has been deprived of his rights under law. 5 U.S.C. § 1205 (1988). *See United States v. Fausto*, 484 U.S. 439, 449, 108 S.Ct. 668, 674, 98 L.Ed.2d 830 (1988). It was therefore provided that an employee may submit to the Board an appeal on any action appealable to the Board. 5 U.S.C. § 7701. The MSPB is charged with correcting on appeal any harmful administrative error. 5 U.S.C. § 7701(c)(2). The term employee is defined as including a preference eligible in the excepted service. 5 U.S.C. § 7511(a)(1)(B). It is provided further that the MSPB has jurisdiction to consider an appeal which in the competitive service challenges "[e]mployment of another applicant when an appellant is entitled to priority employment consideration after a RIF." 5 C.F.R. § 1201.3(a)(13) (1989). Under the regulations, "Reduction in Force, Subpart I, Appeals and Corrective Action," 5 C.F.R. § 351.901 (1989), it is also stated: "An employee who has been furloughed for more than 30 days, separated, or demoted by a reduction in force action may appeal to the Merit Systems Protection Board."

Preference eligible employees who are separated or reduced in grade for unacceptable performance are entitled to an appeal to the MSPB. 5 U.S.C. § 4303 (1988). Those who suffer work injuries are entitled to priority consideration and appeal. 5 U.S.C. § 8101 (1988); 5 C.F.R. § 302.501 (1989). Preference employees discharged for efficiency of the service because of misconduct are entitled to appeal to the MSPB. 5 U.S.C. § 7513 (1988); 5 C.F.R. § 752.405 (1989). Even an employee without veteran's preference who is denied reemployment by his agency after service with the Panama Canal Commission can appeal to the MSPB. 5 C.F.R. § 352.909 (1989). The same is true of excepted employees under the Foreign Assistance Act of 1961, 5 C.F.R. §§ 352.502, 352.508 (1989), as well as certain Indian employees, 5 C.F.R. § 352.707 (1989). All of the above goes to demonstrate the across-the-board

span of appeal rights, especially for preference eligibles.

In more general terms, it is provided that: *"Any employee* or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision." 5 U.S.C. § 7703(a)(1) (1988) (emphasis added). Also, it is provided: "An individual who believes that his or her *reemployment* priority rights under this subpart have been violated because of the employment of another person who otherwise could not have been appointed properly may appeal to the Merit Systems Protection Board under the provisions of the Board's regulations." 5 C.F.R. § 330.209 (1989) (emphasis added). *See also* 5 C.F.R. § 302.101 (1989); 5 C.F.R. § 352.209 (1989). The right of reemployment enforced by appeal is a recognized right of government employees, especially for preference eligibles in either the competitive or excepted service. *See, e.g.,* 5 C.F.R. § 352.204(a)(1) and (3) (1989), as illustrated by interagency transfers and separations for misconduct or unacceptable performance, shown above.

This court may take notice of an official document received from the Chairman of the MSPB under date of August 17, 1989, a 57–page published report, entitled "The Tennessee Valley Authority and the Merit Principles, A Report to the President and the Congress of the United States by the U.S. Merit Systems Protection Board." This report states it was prepared pursuant to direction of the Civil Service Reform Act of 1978 which requires that the MSPB make special studies of "the civil service and other merit systems" to determine if they are operating in accord with the merit principles in the Act and are free of prohibited personnel practices. In this context, TVA falls within the definition of "other merit systems." The report thus evaluates the personnel program of the TVA and compares it to civil service which it parallels in many respects, but differs in some.

The MSPB report on the TVA shows in several places that TVA fully recognizes the necessary deference to the mandates of the Veterans' Preference Act of 1944 and states: *"All* TVA employees have the right to appeal RIF actions to MSPB, as do civil service employees." (Emphasis added.) Preference eligibles have additional appeal rights such as in adverse actions and job restoration. Report at 40. Mr. Noble's separation or job loss by RIF gave rise to his present restoration claim based on the VPA.

In *Noble* we agreed with the thrust of the subsequent MSPB report that the VPA applied to TVA and held that all employees in government are subject to the rights of preference eligibles. *See* 5 U.S.C. § 1302 (1988); 5 C.F.R. § 1201.3(a)(13). The order concedes this. We held that it was error by MSPB not to consider Noble's claim on the merits under the VPA, the applicable statutes, and regulations. We simply remanded with direction that it do so. This is not expanding preference rights of TVA employees who are veterans, rights they already had by various statutes and judicial precedent cited. If this is not so and if veterans have no recourse to protect their preference, MSPB will have to rewrite its report on the TVA, which it has published and sent to the President, Congress, and the court saying that the VPA does apply to TVA employees who qualify for veteran status, and that TVA employees have appeal rights.

The challenged order's pronouncement will come as a great shock to our military veterans. For generations veterans have relied on their preference eligibility for government employment, retention, and rehiring, which has been sanctified by one Congress after another. Under the CSRA, enforcement of those rights can only be had by the MSPB. The concern of the citizens of the United States for veteran's preference, guaranteed by law in both private and public employment, has been a solid cornerstone of American public policy. This was uncontested until now. The order cites 23 veteran's preference statutes, but there are others. The order raises some embarrassing questions:

Did Congress not mean what it said about reemployment preference rights

because, as the order holds, the Congress did not provide a means to enforce them before the MSPB?

It is provided by statute and regulation, as we have shown, that those who are fired for unsatisfactory performance can get a hearing before the MSPB, as can those fired for the efficiency of the service because of misconduct. Is it reasonable then to hold that the law bars a hearing to a faithful, competent employee who is holder of a veteran's preference and who seeks to assert his reemployment rights ahead of a nonveteran?

Has Congress now provided that the incompetent and dishonest are to be accorded MSPB hearings while heroes who have preserved our liberties are barred?

Is the foregoing according to considered congressional intent and legislative history?

The order definitely answers these questions in the affirmative. It does not even admit the result is unfortunate. Indeed the result is hypertechnical, whimsical, bizarre and misreads the mind of the President, and the minds of 531 Members of Congress in 1978 when the CSRA became law.

## II.

The Supreme Court had occasion to address veteran's preference in *Hilton v. Sullivan*, 334 U.S. 323, 68 S.Ct. 1020, 92 L.Ed. 1416 (1948). There the issue was whether a statute gave veterans job retention preference over nonveterans. The Court held that as to government employment the retention preference for veterans was "absolute." It observed that this preference had been the law at least since 1876 and had specifically included the civil service by statute, regulation, and Executive orders. This remains true today but the preference has been extended to reemployment as well by the statutes and regulations cited above.

More recently, in *Fausto*, 484 U.S. 439, 108 S.Ct. 668, the Court considered the case of a nonpreference member of the excepted service. He had been discharged for misuse of a government automobile, among other reasons. He appealed to the MSPB which held it had no jurisdiction under the CSRA to entertain an appeal from an employee in his nonpreference status. Next, the Claims Court denied relief under the Back Pay Act, 5 U.S.C. § 5596 (1988), and the Tucker Act, as amended, 28 U.S.C. § 1491 (1988), holding the CSRA was exclusively applicable and did not provide a nonpreference employee in the excepted service with an appeal to the MSPB. The Federal Circuit reversed, upholding Claims Court jurisdiction under the Back Pay Act.

In reversing the Federal Circuit in *Fausto*, the Supreme Court noted that the purpose of Congress in enacting the CSRA was to replace the prior haphazard system with an integrated one for administrative and judicial review of personnel actions prejudicial to government employees. The Act's comprehensive nature was persuasive to the Supreme Court that there was no congressional intent to grant appeal rights to nonpreference individuals in the excepted service. On the other hand, the Court was careful to point out statutory and regulatory rights preference eligibles in excepted service have to appeal to the MSPB under chapters 43 and 75 of the CSRA. Certain new procedural protections were provided by the CSRA to nonpreference excepted service workers, but appeal was not among them. The Supreme Court recognized that veteran's preference has been a traditional feature, even for excepted service employees, and this was continued by the CSRA. *See Fausto*, 484 U.S. at 449, 108 S.Ct. at 674.

In short, the Supreme Court looked at the structure of the CSRA, the ills it sought to cure, the historical treatment of preference and nonpreference eligibles in excepted service, reconciled the statutes, and concluded there was MSPB review for those holding veteran's preference in excepted service but not for others. It is noted that the Office of Personnel Management was given authority to extend MSPB and judicial review to certain of these less favored employees but has not done so. *Fausto*, 484 U.S. at 448, 108 S.Ct. at 673.

The same analysis can be applied to reconcile provisions for the conceded rights

Noble has to reemployment in his agency over those with lesser rights. Enforcement of those rights is in issue. This analysis leads to the inescapable conclusion that Congress thought it had provided for enforcement of rehiring or reinstatement rights, as indeed it did. The *Fausto* analysis reaches this conclusion for Mr. Noble because, unlike with Mr. Fausto, Noble's claim before the MSPB is undergirded by history favoring veteran's preference and the consent of the nation expressed by the will of Congress. Noble has this advantage over Fausto who really could point to nothing to support his claim of implicit congressional intent to allow his appeal. By contrast, in the present case there is no implicit or overt manifestation of congressional opposition to review. Since Congress historically has favored veteran's preference, including reemployment rights, how can it be implied they are now left unenforceable? To so hold is to say that in providing for preference eligibility Congress has done a useless act, a proposition disfavored in the law. *South Corp. v. United States*, 690 F.2d 1368, 1374 (in banc), 1 Fed.Cir. (T) 1, 215 USPQ 657 (1982).

Justice will best be done by letting Mr. Noble have his day before the MSPB to prove his case if he can, rather than to leave him with no remedy. He disputes key facts left unaddressed. The TVA will also be able to assert other defenses such as the alleged untimeliness of the administrative appeal. Congress is presumed to have intended judicial review of agency actions unless there is persuasive reason to believe otherwise. In *Fausto* there was such a reason. There is none here. The intent of Congress is fairly discernible. Especially is this so when one considers the intent of the statutory scheme of the Civil Service Reform Act as a whole. *See Fausto*, 484 U.S. at 452, 108 S.Ct. at 675. Further, the long history of enforceable veteran's preference under law, as well as the explicit language of the statutes and regulations cited above, deprives the order of viability.

For all of the foregoing reasons, I dissent.